355 So.2d 912 (1978)
STATE of Louisiana
v.
Mack I. FRANK.
No. 60641.
Supreme Court of Louisiana.
March 6, 1978.
*913 Wilfret R. McKee, Gilbert E. Stampley, New Orleans, for defendant-respondent.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Robert F. Barnard, Asst. Dist. Atty., for plaintiff-relator.
CALOGERO, Justice.
Defendant Mack I. Frank is a Baton Rouge attorney who was charged by bill of information in the Parish of Orleans with 1) theft of $5,473.14 belonging to certain heirs, some of whom he represented (R.S. 14:67), 2) forgery of the signatures of eight heirs (payees) to a $7,848.14 check drawn on the First National Bank of Commerce in New Orleans (R.S. 14:72), and 3) issuing or transferring with intent to defraud a forged writing (the same $7,848.14 check) which he knew had been forged (R.S. 14:72). Defendant chose a bench trial. After two days of trial the state rested. Defendant thereupon moved for a directed verdict of acquittal contending among other things that the state had failed to carry its burden of proving jurisdiction (venue or place of commission of the crime), an essential element of the charge which must be established by the state "beyond a reasonable doubt". He also filed a motion to quash on the same grounds, that there was no jurisdiction for this trial in Orleans Parish because none of the three crimes charged were committed there.
The trial judge did not rule on the motion for directed verdict, but he did sustain defendant's motion to quash and dismissed each of the three charges.
We granted writs on application of the state to review the ruling of the trial judge. State v. Frank, 351 So.2d 1209 (La.1977). La.Const. art. V, sec. 5(A) (1974); see also, State v. James, 329 So.2d 713 (La.1976).
In January of 1974 one Sidney Grant died leaving a number of heirs (apparently four in New Orleans and four out of state).[1] Defendant was retained by the out of state heirs to represent them in the succession. Defendant filed the necessary legal pleadings in connection with the succession in the Civil District Court for the Parish of Orleans, apparently a petition for simple possession. Presumably he advised the New Orleans heirs, whom he was not formally representing, of his intention to secure release of the succession funds from the First National Bank of Commerce, and on July 13, 1976 *914 after speaking with two of the heirs he satisfied the bank's attorney that his judgment of possession was in order and presented himself at the First National Bank of Commerce in New Orleans with a request to receive the $7,848.14, which was the balance in the decedent's passbook account. At the bank defendant expressed a preference for receiving the funds personally rather than having them mailed to him. The bank representative apparently debited the passbook account, closed it out, presumably gave the passbook to defendant, and coincidentally issued and delivered to defendant a cashier's check in the sum of $7,848.14 payable to the order of the eight named heirs.
Thereafter, at an unspecified time, defendant forged the signatures of the eight payees to the check. This fact is apparently supported by certain of the evidence presented by the state and conceded, at least for present purposes by defendant.
On July 16, 1976 the check bearing the forged signatures of the eight heirs was deposited in defendant's own account in Capitol Bank and Trust Company in Baton Rouge, Louisiana. Defendant thereupon began drawing for his personal use against the account which contained at least in part the money of the heirs of the succession of Sidney Grant.[2] Defendant did not again communicate with any of the heirs until one of them contacted him and inquired about the succession proceedings. Thereupon (on September 22nd) defendant sent checks to the heirs representing their respective shares of the succession proceeds. Those checks were returned by the bank marked insufficient funds. The worthless checks were not made good. A grocer in New Orleans who accepted the check of one of the heirs repeatedly corresponded with defendant about making the NSF check good, apparently without success. It appears from the district attorney's brief that defendant did, however, make restitution at the conclusion of the second day of trial.
The sole issue before us is whether the trial judge erred in granting the defense motion to quash as to each of the charges on the grounds of improper venue (or, lack of jurisdiction). Although venue must be proved by the state to the trier of fact beyond a reasonable doubt, C.Cr.P. art. 615, on a pretrial motion a trial judge is not required to find that the crime was committed in the parish by this evidentiary standard, but only that venue is proper by a preponderance of the evidence. For that reason we believe that on a motion to quash ruling during trial he similarly is compelled to find venue proper, and allow the case to go the finder of fact, if he believes that the evidence establishes preponderantly that the crime took place within the court's jurisdiction. On the other hand, when the trial judge grants a motion to quash on the ground of improper venue, as did the trial judge in this case, he has determined that the state has failed to establish by a preponderance of the evidence that the crime occurred in the parish. In this Court's review of such a ruling, we must determine whether the trial judge erred in his finding.
Article 611 of the Code of Criminal Procedure provides that "all trials shall take place in the parish where the offense has been committed . . . ." The same article makes provision for the situation in which an act or element of a given crime has occurred in more than one place by reciting that "the offense is deemed to have been committed in any parish in the state in which any such act or element occurred."[3]
We must determine whether an act or element occurred in the Parish of Orleans as to each of the offenses. We will first consider the two forgery counts.
Forgery is defined in Louisiana Revised Statute 14:72 as follows:

*915 "Forgery is the false making or altering, with intent to defraud, of any signature to, or any part of, any writing purporting to have legal efficacy.
Issuing or transferring, with intent to defraud, a forged writing, known by the offender to be a forged writing, shall also constitute forgery."
Defendant was charged in separate counts with forging signatures, proscribed by the first paragraph of the statute, and with transferring a forged writing, proscribed by the second paragraph.
On the evidence as stated previously, there was no evidence whatever that in the Parish of Orleans defendant either forged the payees' signatures on the reverse of the check or issued [4] or transferred to any person or entity the instrument bearing the forged signatures. The facts would, inferentially at least, support the likelihood that the forging and transferring of the check took place in East Baton Rouge Parish, probably shortly before defendant or someone on his behalf deposited the check in defendant's account in the Capitol Bank and Trust Company. In any event, the state did not prove that either act took place in Orleans Parish.
The only arguable contention which the state might put forth is that the element of fraudulent intent, a requirement of both forging signatures and transferring a forged writing, constitutes an element of each of the offenses, proof of which may be evidenced by an act or acts occurring before or after the forgery or transfer. In this event the state would contend that occurrences in New Orleans evidencing at the time of forgery or transfer defendant's fraudulent intent are acts or elements of the offense. The argument might be tenable if the offense required a showing of forging (or transferring) coupled with fraudulent activity. But that is not the case. It is forging (or transferring) with a concomitant state of mind, intent to defraud, which is proscribed by Revised Statute 14:72. The sole act constituting the offense in each case is rather singular in nature. In the contemplation of the statute the exclusive act constituting the offense occurs when the forging or transferring takes place.
Thus, we find that the trial judge was correct in quashing the two forgery counts because the state did not prove by a preponderance of the evidence that these offenses or any constituent act or element thereof occurred in Orleans Parish.
With respect to proper venue on the theft offense, however, we view the matter differently. The crime of theft is statutorily defined as "the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential." R.S. 14:67.
The bill of information simply charges that defendant committed a theft of $5,473.14 belonging to the named heirs. It does not indicate whether the theft charged was a taking without consent or a taking by means of fraudulent conduct, practices or representations. It is evident, however, that it is the latter means of theft which the state proposed to establish.
Unlike our conclusion concerning the forging or transferring of a forged writing that "with intent to defraud" is not a distinguishable or severable act or element of the offense, because not a separate occurrence, a taking by means of fraudulent conduct, practices or representations foreseeably, if not necessarily, contemplates a succession of identifiable acts or occurrences. And one or more of such acts are susceptible of commission "in more than one place, in or out of the parish or state".[5]
*916 Thus to establish venue in Orleans Parish on this theft charge it is necessary only to establish an act or element, and that act or element might well include the taking, or one or more of defendant's fraudulent representations, practices or acts.
Hypothetically the theft in this case, assuming that it was indeed committed, might have entailed a series of fraudulent representations, practices or acts commencing as early as defendant's procuring representation of the heirs and including all that followed. In this event defendant's receipt of the cashier's check at the First National Bank of Commerce in New Orleans would be one of the acts constituting the offense, and occurring in Orleans Parish. On the other hand, if his fraudulent design to steal the heirs' money did not take place until in Baton Rouge, he decided to and did forge the names of the payees to the check, and deposit same to his account, it would not necessarily follow that his earlier receipt of the check in New Orleans, as duly authorized agent and/or attorney for the heirs, would constitute either an unauthorized taking or a fraudulent act.
The trial judge apparently felt that the latter, more than likely, is what occurred in this case or in any event, that the state had not proved the contrary. Assuming that to have been the trial judge's finding, we are not prepared to hold that he erred in this respect. In fact the state probably did fall short of proving that defendant's act in receiving the check in New Orleans (or in showing all that gone before) was an act or element of the theft offense.
Nonetheless, even assuming no fraudulent act before defendant's forging and depositing the check, we find from the transaction no less than one significant occurrence in the Parish of Orleans subsequent to that time which does constitute an act or element of the theft offense. That is the conversion of the heirs' money which took place when the New Orleans bank's cashier's check, after endorsement and deposit in the Baton Rouge bank, was presented in New Orleans to the First National Bank of Commerce for payment. In this holding we follow an earlier opinion of this Court, State v. Cason, 198 La. 828, 5 So.2d 121 (1941). In that case this Court held that an embezzlement was committed in the Parish of East Baton Rouge at the time several $37.50 checks, drawn on the City National Bank of Baton Rouge and cashed in New Orleans, were presented to the Baton Rouge bank for payment and were honored.[6]
That we are here concerned with a cashier's check rather than another type of check is of no moment pertinent to the relevant dispossession of funds which takes place when the respective checks are presented for payment.[7] Thus closure of *917 the decedent's passbook account upon issuance and delivery of the cashier's check did not terminate First National Bank of Commerce's involvement in the monetary affairs of the heirs. The bank simply transferred decedent's funds to the bank's account and promised delivery of the funds upon presentment of the cashier's check for payment.
For the foregoing reasons we find it unnecessary to determine whether defendant's acts predating forgery and deposit, or his acts subsequent to the First National Bank of Commerce's paying the cashier's check (including the defendant's sending the heirs his own NSF checks on September 22nd) or any one of them, were occurrences in New Orleans and constituted acts and/or elements of the theft offense. Because the conversion of the heirs' money actually took place when the New Orleans bank paid out the money, there is jurisdiction to try defendant in Orleans Parish for theft. An act or element occurred there. C.Cr.P. art. 611.

Decree
For the foregoing reason the ruling of the trial judge sustaining the motion to quash and dismissing the two forgery counts is affirmed. The ruling of the trial court sustaining the motion to quash the charge of theft is reversed and the case is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
SANDERS, C. J., concurs in part and dissents in part with written reasons.
MARCUS, J., concurs in part and dissents in part and assigns reasons.
SANDERS, Chief Justice (concurring in part and dissenting in part).
I concur in the holding that Orleans Parish is a proper venue as to the theft charge.
I dissent from the holding that Orleans Parish is without venue of the forgery charge. The defendant is charged with transferring a forged writing with intent to defraud. The transfer did not terminate until it was presented to and paid by the bank in New Orleans. Hence, in my opinion, Orleans Parish is a proper venue for the forgery charge also.
MARCUS, Justice (concurring in part and dissenting in part).
I concur in the reversal of the trial judge's sustaining the motion to quash the charge of theft. I dissent from the affirmance of the ruling of the trial judge sustaining the motion to quash and dismissing the two forgery counts. I consider that acts or elements of each of the offenses occurred in the Parish of Orleans.
NOTES
[1] Because neither the state nor the defendant deem it necessary or advisable to procure and file here a transcription of the evidence presented by the state at trial (such was essentially the response by counsel for both the state and defendant to a question posed at oral argument), we are somewhat handicapped in reviewing and reciting the facts upon which the trial judge relied in his ruling. The parties apparently agree, however, that there are no major differences between them concerning these facts. We thus glean the facts from the pleadings and memoranda filed in the lower court, the briefs filed in this Court, and a limited stipulation of facts as set out in defendant's brief.
[2] It seems that a portion of the money may have belonged to defendant for his fee and/or costs, for while the check was in the sum of $7,848.14 the theft charged is in the sum of $5,473.14.
[3] The article tracks a 1962 amendment of former R.S. 15:13. Before the 1962 amendment adopted this "act or element" test on recommendation of the Louisiana State Law Institute, the requisite showing was the "substantial element" test.
[4] "Issue" is defined under our negotiable instruments law in R.S. 10:3-102(1)(a) as "the first delivery of an instrument to a holder or remitter."
[5] C.Cr.P. art. 611 provides:

"All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred." [emphasis provided]
[6] In holding that the crime of embezzlement took place where the funds were actually withdrawn from the bank account, the Cason court stated:

"The money alleged to have been embezzled from the Department of Labor was not converted when Cason was entrusted with the money in his official position as Commissioner of Labor nor when he put Rieth, Sardenga and Vlahakis on the payroll of the Department nor when he drew checks payable to their order which were sent to New Orleans and were cashed in New Orleans by Rieth, Sardenga and Vlahakis. The conversion took place and the crime was committed, if at all, in the Parish of East Baton Rouge when the checks payable to Rieth, Sardenga and Vlahakis were presented for payment at the City National Bank of Baton Rouge and were honored by that bank." [emphasis provided] 5 So.2d at 124.
See also, State v. Smith, 194 La. 1015, 195 So. 523 (1940).
[7] "The cashier's check is simply a bill of exchange or draft drawn by a bank upon itself," Brady on Bank Checks, § 1.6 (4th ed.); 10 Am.Jur.2d Banks, § 544, and the drawee on a bill of exchange or draft is not called upon to part with the funds unconditionally promised until such draft is presented for payment.

The only difference between the ordinary check and the cashier's check is that in the latter the drawee bank is also the drawer and the check is "accepted" upon issuance. Brady on Bank Checks, supra. In each instance, however, the funds are transferred when the check is presented. 10 Am.Jur.2d Banks, § 544.