752 So.2d 834 (2000)
STATE of Louisiana
v.
David E. JOSHLIN.
No. 99-KK-1004.
Supreme Court of Louisiana.
January 19, 2000.
Rehearing Denied February 18, 2000.
*835 Richard P. Ieyoub, Attorney General, Charles A. Shropshire, District Attorney, William G. Carmichael, Asst. District Attorney, Counsel for Applicant.
Aidan Cyril Reynolds, Unglesby, Koch & Reynolds, Baton Rouge, Counsel for Respondent.
KNOLL, Justice.[*]
The State charged David E. Joshlin (defendant), a Texas resident, by bill of information with insurance fraud (Count 2), a violation of LA. REV. STAT. ANN. 22:1243.[1] The State alleged that on or about December 16 and/or 18, 1995, defendant presented written statements to CNA Insurance Company[2] (CNA) in support of a claim for payment as the beneficiary of a life insurance policy on the life of Bennie Frank Joshlin (Bennie), defendant's brother, knowing the statements contained false and/or fraudulent information.
Defendant filed a motion to quash Count 2 on the ground that the trial court lacked jurisdiction over the offense because the act constituting the offense, the filing of the insurance claim, occurred wholly outside Louisiana. At the hearing on the motion to quash, neither the State nor the defendant introduced evidence. When defendant sought appellate review of the trial court's adverse ruling, the parties jointly submitted the following stipulation of facts:

*836 Mr. David Edward Joshlin [defendant] petitioned the 20th Judicial District Court in East Feliciana Parish on August 2, 1995 seeking a declaratory judgment and on December 5, 1995 testified as to the disappearance of Bennie Frank Joshlin and, thereafter, obtained a declaratory judgment ordering the State of Louisiana to issue a death certificate for Bennie Frank Joshlin; thereafter, David Edward Joshlin mailed claims for insurance benefits on the life of Bennie Frank Joshlin from the State of Texas to the State of Illinois.
In the State's response to defendant's discovery request, the State alleged that defendant initiated a plan in the mid-1980s to resurrect the identity of his long-deceased brother, Bennie. According to some family members, Bennie died as an infant in 1930. The alleged scheme invalid the opening of bank accounts and a business in Bennie's name, together with various vehicular purchases during the course of several years in the deceased brother's name. In addition, the State alleged that defendant obtained two insurance policies in Bennie's name which listed defendant as beneficiary.
The discovery responses further describe that defendant filed a report with the West Feliciana Parish Sheriff's Office, which detailed that Bennie was missing in 1991 after attempting to raft down the Mississippi River from Vidalia to St. Francisville. The discovery responses further state that defendant testified at a court hearing in East Feliciana Parish in December of 1995 about Bennie's disappearance on the river. Ultimately, after considering the evidence presented, the trial court issued a declaration of death for Bennie Frank Joshlin.[3]
The State contended that defendant utilized the trial court judgment which declared Bennie's accidental death to file claims from his Texas residence with two insurance companies, seeking life insurance proceeds as the beneficiary. The State further asserted that defendant provided false testimony at the hearing in the trial court which resulted in a judgment declaring Bennie's death.
The trial court found that venue was proper in East Feliciana Parish, resting its holding on defendant's allegedly fraudulent conduct in that parish which included his filing of a civil suit to have his brother declared dead and defendant's alleged false testimony at that hearing. The court of appeal, First Circuit, concluded otherwise, finding that the trial court did not have jurisdiction over the offense because defendant effected the elements of the insurance fraud in Texas, not Louisiana. The appellate court premised its holding on a finding that defendant submitted the claims for the proceeds to the accidental death policies from his residence in Texas. State v. Joshlin, 98-1538 (La.App. 1 Cir. 3/12/99), 737 So.2d 965 (unpublished opinion). We granted the State's writ application to consider the propriety of the appellate court's decision. State v. Joshlin, 99-1004 (La.6/25/99), 745 So.2d 622. We reverse and remand.

LAW AND ANALYSIS
Art. III, § 2, cl. 3 of the United States Constitution provides that "the Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed." Likewise, the Sixth Amendment requires that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district *837 wherein the crime shall have been committed."[4]
Reiterating this legal behest, LA. CONST. art. I, § 16 requires that every person charged with a crime has the right to an impartial trial "in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with the law." LA. CODE CRIM. PROC. ANN. art. 611 restates Louisiana's constitutional canon in this regard and further provides that "[i]f acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred."
The locus delicti of the charged offense "`must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" Cabrales, 524 U.S. at 6-7, 118 S.Ct. 1772 (quoting United States v. Anderson, 328 U.S. 699, 703, 66 S.Ct. 1213, 90 L.Ed. 1529 (1946)). In effectuating this inquiry, a court must first identify the conduct of the offense and then discern the location of the commission of the criminal acts. United States v. Rodriguez-Moreno, 526 U.S. 275, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999); see Cabrales, 524 U.S. at 6-7, 118 S.Ct. 1772; Travis v. United States, 364 U.S. 631, 635-37, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961); United States v. Cores, 356 U.S. 405, 408-09, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958). In the identification of the relevant conduct, a court may look to the verbs used in the statute to determine the nature of the substantive offense. Rodriguez-Moreno, 526 U.S. at 280, 119 S.Ct. 1239. Regardless, the Court stated:
While the "verb test" certainly has value as an interpretative tool, it cannot be applied rigidly to the exclusion of other relevant statutory language. The test unduly limits the inquiry into the nature of the offense and thereby creates a danger that certain conduct prohibited by statute will be missed.
Rodriguez-Moreno, 526 U.S. at 280, 119 S.Ct. 1239.
The particular question before us is whether in LA. REV. STAT. ANN. 22:1243, the Louisiana Legislature intended to punish the preliminary acts which are the foundation for the statements defendant made in the allegedly fraudulent claim he presented to the life insurance company.
Statutory interpretation commences with the language of the statute and progresses with the assumption that each statutory term has "a particular, nonsuperfluous meaning." Bailey v. United States, 516 U.S. 137, 145-46, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); Cat's Meow, Inc. v. City of New Orleans Through Dept. of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186 (noting that the starting point for interpretation of any statute is the language of the statute itself); First Nat'l Bank of Boston v. Beckwith Machin. Co., 94-2065 (La.2/20/95), 650 So.2d 1148 (noting that courts should give effect to all parts of a statute and not adopting a construction making any part superfluous or meaningless, if that result can be avoided).
Turning to the legislation at hand, a review of the statutory history shows that with the enactment of 1992 La. Acts 707 the Louisiana Legislature added the provisions of LA. REV. STAT. ANN. 22:1241-1247 to the Louisiana Insurance Code. With the passage of this Act, the Legislature created a section within the Department of Insurance devoted to the investigation and prosecution of insurance fraud. LA. REV. STAT. ANN. 22:1241.
*838 LA. REV. STAT. ANN. 22:1242 defines a "Fraudulent insurance act," in pertinent part as:
acts or omissions committed by any person who, knowingly and with intent to defraud:
(a) Presents, causes to be presented, or prepares with knowledge or belief that it will be presented to or by any insurer, ... any oral or written statement which he knows to contain materially false information as part of, or in support of, or denial of, or concerning any fact material to or conceals any information concerning any fact material to the following:
* * *
(iii) A claim for payment or benefit pursuant to any insurance policy. (emphasis added).
LA. REV. STAT. ANN. 22:1242(2) further defines "Statement" as:
[A]ny notice, statement, proof of loss, bill of lading, receipt for payment, invoice, account, estimate of property damages, bill for services, diagnosis, prescription, hospital or doctor records, test results, x-rays [sic], or other evidence of loss, injury, or expense.
LA. REV. STAT. ANN. 22:1243, the specific statute with which defendant is charged, provides in pertinent part:
A. Any person who, with the intent to injure, defraud, or deceive any insurance company, or any insured or other party in interest, or any third party claimant:
(1) Presents or causes to be presented any written or oral statement including computer-generated documents as part of or in support of or denial of a claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains any false, incomplete, or fraudulent information concerning any fact or thing material to such claim; ...
(2) ... is guilty of a felony and shall be subjected to a term of imprisonment, with or without hard labor, not to exceed five years, or a fine not to exceed five thousand dollars, or both, on each count.
Our concern with the appellate court's resolution of the issue before us is its focus on the active verb "presents" in the statute to the exclusion of the verb phrase "causes to be presented" which immediately follows and encompasses the preparatory acts of defendant's alleged scheme. The appellate court's reading of LA. REV. STAT. ANN. 22:1243 virtually eliminates the second verb phrase from the statute and contravenes well-established jurisprudence. See Bailey, 516 U.S. at 145-46, 116 S.Ct. 501; First Nat'l Bank of Boston, 650 So.2d at 1148. To the contrary, although the phrase "causes to be presented" may encompass the presentation of an insurance claim for payment, it may also include acts of the scheme which cause the inclusion of false or misleading statements for the presentation of the claim. Indeed, in the present case, defendant's procurement of the Louisiana judgment, the keystone of defendant's scheme without which a beneficiary claim could not have been filed, veiled defendant's scheme with the semblance of authenticity.
Not only does our reading give meaning to each statutory term, it further results in a construction which is consistent with the provisions of LA. REV. STAT. ANN. 22:1244, the insurance fraud enactment which the Legislature passed contemporaneously with LA. REV. STAT. ANN. 22:1243. Although LA. REV. STAT. ANN. 22:1244 addresses a variation of insurance fraud not presently before us, the statutory language nonetheless aids us in the construction of the language of LA. REV. STAT. ANN. 22:1243.
Under the provisions of LA. REV. STAT. ANN. 22:1244(A)(1), a person commits insurance fraud when one "[k]nowingly causes or participates in a vehicular collision, or any other vehicular accident, for the purpose of presenting any false or fraudulent claim." Thus, this statute indicates *839 the Legislature's proscription of antecedent fraudulent acts (the participation in the vehicular accident) which are the basis of a fraudulent claim ultimately presented to an insurance company for payment on an automobile policy. Considering the statutory language of LA. REV. STAT. ANN. 22:1243 and LA. REV. STAT. ANN. 22:1244(A)(1), we conclude that the same legislative intent illumined both contemporaneous enactments. Moreover, utilizing the definitions provided in this section of the Insurance Code, it is clear that defendant's action for declaratory judgment in East Feliciana Parish and the resultant declaratory judgment constituted "other evidence of loss." LA. REV. STAT. ANN. 22:1242(2). In addition, if the State proves that defendant's brother died as an infant, it is clear that the defendant used the declaratory judgment and that he "[p]resent[ed], cause[d] to be presented, or prepare[d]" the claim pursuant to LA. REV. STAT. ANN. 22:1242(1) "with knowledge or belief that it will be presented to ... an insurer" and with the knowledge that it "contain[ed] materially false information as part of, or in support of ... [a] claim for payment or benefit pursuant to any insurance policy."
In the present case, although the State did not present direct evidence that defendant provided CNA with a copy of the judicial proceedings when he presented his claim for accidental death benefits, the record, nonetheless, contains a copy of the claim form defendant provided CNA. On that form, defendant indicated the following typed statement in the section which required the claimant to provide a copy of the verdict of an inquest, if conducted, into the insured's death: "Court Declaration of Death." If the State develops the facts that are alleged and it is shown that defendant's act in securing a declaration of death from the Twentieth Judicial District Court in East Feliciana Parish was based upon false or fraudulent information, we find that such act in this State "caused [a claim] to be presented" to CNA which falls within the ambit of proscription decried in LA. REV. STAT. ANN. 22:1243. Accordingly, we find that venue for the charged offense is properly found in East Feliciana Parish because defendant's action in East Feliciana Parish constituted an allegedly fraudulent insurance act integral to the existence of the insurance claim which could be prosecuted there.
In reaching a contrary conclusion, the appellate court relied upon State v. Frank, 355 So.2d 912 (La.1978), a case that we find clearly distinguishable. In Frank, the defendant, a Baton Rouge attorney, was charged in Orleans Parish with forgery and theft of money. After defendant secured the release of succession funds and obtained a cashier's check from a New Orleans bank, he forged the heirs' signatures and deposited the check in his bank account in Baton Rouge. After the State filed criminal charges in Orleans Parish, defendant moved to quash the bill of information, contending that venue was improper in Orleans Parish. We agreed, noting that intent was not a separate element of the offense and that the forgery, the sole act of the crime, did not occur in Orleans Parish. Although we do not now withdraw from that opinion, we find that the language of LA. REV. STAT. ANN. 22:1243 is broader and encompasses defendant's actions in East Feliciana Parish, i.e., the filing of the civil action and alleged false court testimonyessential elements of the insurance fraud that only culminated with the filing of the insurance claims.
We likewise find defendant's reliance on State v. Pollard, 215 La. 655, 41 So.2d 465 (1949), misplaced. In Pollard, the defendant was charged with theft. At the time of that prosecution, Article 67 of the Criminal Code defined theft as "the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices or representations." In stark contrast to Pollard which rested on the criminalization of the taking, not *840 the act of presenting documents in aid of that taking, LA. REV. STAT. ANN. 22:1243 criminalizes, as particularized supra, the acts preparatory to the filing of the insurance claim.

DECREE
For the foregoing reasons, the judgment of the appellate court as it relates to Count 2 of the bill of information is reversed and set aside, and this matter is remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment of the appellate court is affirmed.
REVERSED, IN PART, AND REMANDED.
LEMMON and KIMBALL, JJ., and CALOGERO, C.J., dissents and assigns reasons.
LEMMON, J., Dissenting.
The majority decision starts with the faulty premise that the issue is whether the Legislature, in enacting La.Rev.Stat. 22:1243 (the penal statute under which defendant was charged), "intended to punish" acts preliminary to the written or oral statement presented in support of the insurance claim. In my view, the issue is whether the Legislature (regardless of its intent) criminalized such preparatory acts in the express words of the penal statute.
The majority refers to Section 1242, which includes, in the definition of "fraudulent insurance act," the preparation with intent to defraud of a written or oral statement, knowing that it will be presented in support of an insurance claim. However, the Legislature did not provide a criminal penalty for committing a "fraudulent insurance act," as defined in Section 1242. The analysis must focus on Section 1243, which provides the penalty only for the conduct expressly proscribed by that section, and that conduct does not include Section 1242(1)(a)'s words "prepares with knowledge or belief that it will be presented."
When the focus is on the correct statute, La.Rev.Stat. 22:1243, defendant is entitled to have the charges quashed if the prosecutor did not charge him with conduct in Louisiana in which he "present[ed]" or "cause[d] to be presented" a written claim. The prosecutor concedes that defendant did not present such a statement in Louisiana. The sole issue is whether defendant caused such a statement to be presented in Louisiana.
Generally, one presents something by bringing the thing to someone's notice or introducing the thing into someone's presence, and one causes something to be presented by acting indirectly and having another person make the presentation or submission of the thing. It is a far stretch of the English language to say that one causes a statement to be presented to an insurance company by performing acts that lead up to the preparation of the statement which may (or may not) be presented to the insurance company at a later date (at which time the crime is committed). At the very least, Section 1243 is ambiguous as to whether defendant's conduct in obtaining an alleged fraudulent death certificate in Louisiana falls within the purview of the statute, and the doctrine of lenity requires the statute to be construed in favor of defendant. See State v. Becnel, 93-2536 (La.5/31/96), 674 So.2d 959; State v. Piazza, 596 So.2d 817 (La. 1992).
The Legislature arguably could have criminalized the obtaining of a fraudulent death certification for the purpose of making a false life insurance claim.[1] However, the Legislature did not make such conduct criminal in Section 1243, and no other conduct prohibited by the charged statute has been shown to have occurred in Louisiana.[2]
*841 Accordingly, the motion to quash should have been granted.
KIMBALL, J., Dissenting.
Article I, § 16 of the Louisiana Constitution guarantees the right of the accused to a fair trial "in the parish where the offense or elements of the offense occurred." See also La. C. Cr. P. art. 611 ("[a]ll trials shall take place in the parish where the offense has been committed ..."). In some instances, a crime may consist of a succession of identifiable acts or occurrences, which, in turn, are susceptible of commission in more than one place, in or out of the parish or state. In such instances, a defendant may be brought to trial in any such place where any one act occurred.
In my view, the majority in this case mistakenly reasons that a showing of fraudulent activity meets the requirement of La. R.S. 22:1243(A), and thus enables the State to charge the defendant with insurance fraud for his actions in obtaining a death certificate for his brother in East Feliciana Parish. However, the crime of insurance fraud under this subsection does not require a showing of fraudulent activity nor is the intent to defraud, which is required by the statute, a distinguishable or severable act or element of the offense. By the clear language of the statute, the crime of insurance fraud consists of the presentment of the insurance claim with the accompanying state of mind, the intent to defraud and knowledge the claim is false. In this case, these actions did not occur in Louisiana. The defendant mailed the insurance claim from his home in Texas to the CNA office in Chicago, Illinois. Thus, assuming he is guilty of insurance fraud, the elements of the crime occurred in Texas and/or Illinois because that is where he "present[ed] or caus[ed] to be presented any written or oral statement... as part of or in support of ... a claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contain[ed] any false, incomplete or fraudulent information concerning any fact or thing material to such claim." The defendant in this matter obtained a judgment declaring his brother deceased in a Louisiana court. Although that act was certainly preparatory to committing the alleged crime of insurance fraud, it is not an element of the crime itself. The actual crime of insurance fraud did not take place until the defendant submitted the insurance claim containing information he knew to be false, with intent to defraud, to CNA. Thus, I would affirm the judgment of the court of appeal.
For the above reasons, I respectfully dissent.
CALOGERO, C.J., Dissenting.
I dissent from the judgment reversing the court of appeal's decision concerning Count 2 of the bill of information. I believe that David Joshlin's act of procuring a judgment in East Feliciana Parish is not a preparatory act encompassed by the phrase "caused to be presented." La.Rev. Stat. 22:1243(A)(1).
NOTES
[*] Victory, J., not on panel. See Rule IV, Part 2, § 3.
[1] Defendant was also billed with perjury (Count 1) and theft (Count 3). He filed a motion to quash the perjury count, urging that the perjury statute at the time of the alleged offense failed to penalize perjury in a civil case. The State agreed that Count 1 should be quashed. Accordingly, the trial court granted defendant's motion to quash Count 1 of the bill of information. This issue is not before us. The trial court also denied defendant's motion to quash Count 3, the theft charge, and the appellate court affirmed that denial. Defendant has not raised this issue and, thus, this ruling is also not before us.
[2] The defendant also filed a claim with Guaranty Reserve Life Insurance Company (Guaranty). Guaranty paid defendant life insurance proceeds of $10,417.00. It is this payment that forms the basis of the theft charge alleged as Count 3 of the bill of information. See footnote 1 supra.
[3] David E. Joshlin was represented by counsel and the trial court appointed a curator ad hoc to represent defendant's missing brother. The record shows that Joshlin presented witness testimony from persons who were involved in the search for defendant's brother along the Mississippi and Atchafalaya Rivers, as well as persons who had dealings with the allegedly missing brother in the Felcianas prior to his alleged disappearance. The curator cross-examined the witnesses and filed two newspaper clippings into evidence which reflected her attempts to locate the missing brother.
[4] In United States v. Cabrales, 524 U.S. 1, 6, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998), the United States Supreme Court stated that the Sixth Amendment reflects "a matter of concern to the Nation's founders. Their complaints against the King of Great Britain, listed in the Declaration of Independence, included his transportation of colonists `beyond Seas to be tried.'" (footnote omitted).
[1] Such conduct, if proved, is reprehensible and should be punished under some statute.
[2] Under the discovery responses, La.Rev.Stat. 22:1243 was violated in Texas and perhaps in Illinois, but not in Louisiana.