GUIDRY, J.
2The defendant, Christopher Colbert, was charged by bill of information with one count of unauthorized use of an access card as theft, a violation of La. R.S. 14:67.3. The defendant filed a motion to quash based on improper venue. Following a hearing on the issue, the trial court granted the motion. The State now appeals, asserting one assignment of error. We affirm the ruling of the trial court.
FACTS
On June 27, 2003, Allen Hodgkins contracted with the defendant’s moving company, Compass Moving and Storage, a business entity doing business in Texas and Louisiana. The company was hired to move Hodgkins’s belongings from a storage facility in Baton Rouge to Virginia. As a down payment, Hodgkins authorized the defendant to charge $100 to his American Express credit card. During these communications via telephone and fax, the defendant was in Texas and Hodgkins was in Virginia. Hodgkins signed the contract in Virginia.
On July 22, an agent of the moving company arrived at the storage facility to load Hodgkins’s goods and deliver them to Virginia. A dispute arose because the moving truck was not the type of truck Hodgkins had agreed to. Also, the truck was partially loaded with some other person’s contents. While in Virginia, Hodg- *163 kins contacted the defendant in Texas and told him this was unacceptable. The truck driver returned the next day with a completely empty truck, loaded Hodgkins’s belongings, and took them to Virginia.
On July 25, Hodgkins, while in Virginia, contacted the defendant in Texas. The defendant told Hodgkins that he wanted the payment for moving in cash. Hodg-kins insisted that the defendant honor his contract and accept his credit card as a form of payment. Hodgkins discovered on approximately August 1 that the defendant had charged his credit card on July 25 for $5,283, the initially agreed upon amount for the moving expenses. Hodgkins testified that even after his credit 3card was charged, the defendant’s company continued asking for a cash payment for the delivery of his goods.[1] Following an investigation by American Express and the federal government, an agreement was reached between the parties. Hodgkins wired the defendant $4,000 in cash, and American Express credited the $5,283 charge to Hodgkins’s card.
ASSIGNMENT OF ERROR
In its sole assignment of error, the State avers the trial court erred in granting the defendant’s motion to quash. Specifically, the State asserts that East Baton Rouge Parish is an appropriate venue under the “acts or elements” test.
Article I, § 16 of the Louisiana Constitution guarantees the right of the accused to a fair trial “in the parish where the offense or an element of the offense occurred.” Louisiana Code of Criminal Procedure article 611 provides in pertinent part:
All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.[2]
In the instant matter, the defendant was charged with unauthorized use of an access card as theft pursuant to La. R.S. 14:67.3. The relevant portion of Article 14:67.3 is paragraph B, which provides in pertinent part:
Whoever, directly or indirectly, by agent or otherwise, with intent to defraud, ... uses an Access Card belonging to another person without authority of said person; thereby obtaining, whether contemporaneously or not, credit, money, goods, services or anything of value shall be guilty of theft and shall be subject to the penalties provided for the crime of theft in La. R.S. 14:67.
4The State argues that the crime of unauthorized use of an access card, while considered a theft, is also a form of embezzlement. In support of this argument, the State relies principally on two Louisiana Supreme Court decisions, State v. Hayes, 01-3193 (La.1/28/03), 837 So.2d 1195 (per curiam) and State v. Joshlin, 99-1004 (La.1/19/00), 752 So.2d 834. We find that the State’s assertion that unauthorized use of an access card is a form of embezzlement is without support, and that *164 its reliance on both Hayes and Joshlin is misplaced.
In Hayes, the defendant was employed by Lake Charles Diesel, which was located in Calcasieu Parish. Outfitted with company equipment, tools, and uniforms in Calcasieu Parish, the defendant was dispatched to repair a vessel engine in La-fourche Parish, pursuant to a contract entered via facsimile transmissions to and from Lafourche and Calcasieu Parishes. While in Lafourche, the defendant reported to Lake Charles Diesel that he had received a cashier’s check from the owner of the vessel in the amount of $15,000. Instead of bringing the check back to Cal-casieu Parish, as he was told, the defendant reported that the check had been stolen from his truck.[3] That was the last time the defendant was heard from. Hayes, 01-3193 at pp. 1-2, 837 So.2d at 1196.
The defendant was charged in Calcasieu Parish with theft of currency valued over $500, in violation of La. R.S. 14:67(A). The defendant moved to quash the information based on improper venue, claiming the alleged criminal activities could have occurred only in Lafourche Parish, not Calcasieu Parish. The trial court ruled that venue was proper in Calcasieu Parish. The Third Circuit reversed the trial court, finding that the State failed to show the defendant had formed the intent to permanently deprive his employer of the tools and uniforms at the time of the taking. The Third Circuit also found the State did not prove that, while in IsCalcasieu Parish, the defendant had formed the requisite intent to permanently deprive his employer of the $15,000, which he received as payment from a customer in Lafourche Parish. Hayes, 01-3193 at pp. 2-3, 837 So.2d at 1196-1197.
The supreme court reversed the third circuit and found that venue in Calcasieu Parish was proper. The supreme court noted that the locus delicti of a crime is determined from the nature of the crime alleged and the location of the act or acts constituting it. The court observed that theft is broadly defined in La. R.S. 14:67(A), and that the statute combines the common law crime of larceny with the offense of embezzlement. In the offense of embezzlement, the court explained, the felonious conversion or misappropriation takes place after the lawful receipt of the goods or property by the accused in the course of a fiduciary relationship with the victim that he then breaches in the act of conversion. The intent to deprive the owner of his property permanently, therefore, need not coincide with the actual taking.[4] The court found that the crime of theft charged against the defendant was in the nature of an embezzlement offense. Hayes, 01-3193 at pp. 3-5, 837 So.2d at 1197-1198.
The charged crime in the instant matter is unauthorized use of an access card (La. R.S. 14:67.3), which is a narrowly defined, *165 specific type of theft. The Hayes court interpreted and expanded on the meaning of theft under La. R.S. 14:67 and found theft to be “in the nature of’ an embezzlement offense. It does not follow, however, that unauthorized use of an access card, a particularized species of theft, is also an “embezzlement-type crime,” as asserted by the State. The proscribed conduct in La. R.S. 14:67.3 is the use of an access card of another person without 6his authority. There is no similarly proscribed conduct in Hayes. Where it may have been appropriate for the Hayes court to liken the defendant’s crime to embezzlement because of the particular facts of the case, no such comparison of the defendant’s alleged crime in the instant matter to embezzlement is warranted. In Hayes, there was an employment relationship between Lake Charles Diesel and the defendant. Thus, by the defendant’s fiduciary relation with Lake Charles Diesel, the defendant was entrusted with Lake Charles Diesel’s property. In the instant matter, there was no employment relationship between Hodg-kins and the defendant. The only connection between these parties was through a moving contract. We fail to see how the defendant’s charging several thousand dollars to Hodgkins’s credit card without his consent is, in any meaningful way, an embezzlement-type offense.
Even assuming, arguendo, that unauthorized use of an access card was an embezzlement-type crime, venue would still not be proper in East Baton Rouge Parish under the Hayes rationale. The Hayes court noted that under Article 611, “If acts constituting an offense ... occurred in more than one place ... the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.” The court found that, while the defendant may have formed the intent to convert the diesel parts and uniforms to his own use in La-fourche Parish, venue in Calcasieu Parish was proper because the defendant took possession of the diesel parts and uniforms in Calcasieu Parish. In support of this proposition, the court cited State v. Wells, 195 La. 758, 764, 197 So. 420, 422 (1940): “In a case of embezzlement of property received in trust in the parish in which it is to be returned, but disposed of in another parish, the venue is in the parish in which the property was to be returned.” Hayes, 01-3193 at p. 5, 837 So.2d at 1198.
7In the instant matter, under the Hayes rationale, the embezzled property would be the several thousand dollars charged to Hodgkins’s credit card. At the time the defendant charged the credit card, presumably without the consent of Hodgkins, the defendant was in Texas, and Hodgkins was living in Virginia.[5] Thus, since Hodg- *166 kins would have received a credit to his credit card while he was living in Virginia, proper venue, under Hayes, would be in Virginia.
With respect to the missing money, the Hayes court found that, while it was not proved that the defendant converted the $15,000 to his own use in Calcasieu Parish or formed the intent to do so, Lake Charles Diesel had, nevertheless, imposed upon him the duty to return to the company in Calcasieu Parish with the payment. In finding venue proper in Calcasieu Parish, the court noted that Louisiana was one of several jurisdictions that followed the jurisprudential rule 8that venue in embezzlement was proper where the accused was under obligation to account. In citing State v. Cason, 198 La. 828, 836, 5 So.2d 121, 123 (1941) for support of this rule, the Hayes court stated that “in the absence of proof where the act of conversion occurred, ‘it will be presumed that the illegal conversion was accomplished in the jurisdiction of the court where the money was entrusted to the accused or at the place at which an accounting is to be made ....”’ Hayes, 01-3193 at p. 6, 837 So.2d at 1198.
Assuming these presumptions applied to the instant matter, venue would be proper either in Texas, where the money was entrusted to the defendant, or in Virginia, where the defendant would be under obligation to Hodgkins to account for the money charged to his credit card. However, since there is no absence of proof as to where the ostensible conversion took place in the instant matter, these presumptions do not apply. As discussed in Cason, 198 La. at 836, 5 So.2d at 123:
[TJhese presumptions can be indulged in only in the absence of proof showing that the conversion of the monies took place within another jurisdiction — for, inasmuch as the essence of the unlawful offense is a conversion of the entrusted property, the parish in which the conversion took place determines the court’s jurisdiction.
In the instant matter, the defendant was, at all times, in Texas, including the moment he charged several thousand dollars to Hodgkins’s credit card. Thus, the conversion, assuming there was one, could have taken place only in Texas. As such, proper venue would be in Texas.
The Hayes court further found that, even had it been shown that the defendant converted the money in Lafourche Parish, the court would still be inclined to find venue proper in Calcasieu Parish. The court explained that the place where the effect of the criminal conduct occurred was an important consideration in determining whether the criminal acts had substantial contacts with the venue chosen for prosecution. The court noted that the force of the defendant’s alleged criminal acts were *167 felt nowhere else than in Calcasieu Parish | nwhere Lake Charles Diesel had lost its parts and uniforms, as well as the cash payment made by the vessel owner in La-fourche Parish to the defendant. Hayes, 01-3193 at p. 7, 837 So.2d at 1198-1199.
Applying this impact analysis under Hayes to the instant matter, we do not find that the force of the defendant’s alleged unauthorized use of Hodgkins’s credit card was felt in East Baton Rouge Parish. At the time of the alleged unauthorized use, the defendant was in Texas. Hodgkins’s goods, at that time, were already in Virginia, and Hodgkins was already relocated and living in Virginia. Thus, given the minimal, if not non-existent, contact that any of the parties had with Louisiana at the time of the alleged conversion, venue would not be proper in Louisiana under the Hayes impact analysis.[6]
The State asserts in its brief that the theory of the prosecution is that the defendant constructed a plan whereby he would be able to embezzle funds from Hodgkins. The defendant’s intent to defraud, according to the State, can only be inferred from looking at the preparatory acts occurring in Louisiana. Thus, while the actual use of the credit card occurred outside of Louisiana, the acts facilitating the unauthorized use of Hodgkins’s credit card, such as the defendant’s moving company coming to Louisiana and loading a truck with Hodg-kins’s goods pursuant to a contract, occurred in Baton Rouge. In support of this preparatory acts theory, the State relies on Joshlin.
The State’s reliance on Joshlin is misplaced. In Joshlin, the Louisiana Supreme Court found venue proper in the prosecuting jurisdiction because certain preparatory acts for the charged crime of insurance fraud occurred within that jurisdiction. The court determined that, pursuant to the specific language of La. 10R.S. 22:1243,[7] the legislature “intended to punish preliminary acts which are the foundation for the statements defendant made in the allegedly fraudulent claim he presented to the life insurance company.” Joshlin, 99-1004 at p. 5, 752 So.2d at 837.
There is no similar language with regard to preparatory acts found in La. R.S. 14:67.3.[8] The Joshlin court analyzed venue in terms of the defendant’s preparatory acts because such acts constituted a fraudulent insurance act. We find the result reached in Joshlin specific to the crime charged in that case and, as such, inapplicable to the instant matter. Any attempt to superimpose a preparatory acts element onto La. R.S. 14:67.3, so as to bring within its purview any activity in Louisiana relat *168 ed to, and especially prior to, the move, is improper.
We do not find venue to be proper in East Baton Rouge Parish under Hayes or Joshlin. The trial court did not abuse its discretion in granting the defendant’s motion to quash.
The assignment of error is without merit.
TRIAL COURT’S RULING GRANTING THE MOTION TO QUASH AFFIRMED.

. Apparently, Hodgkins’s items were taken to a storage facility in Virginia, and were not going to be moved from there to Hodgkins's residence in Virginia until Hodgkins paid for the moving expenses in cash.

. In Article 611, the "act or element" test is adopted in preference to the "substantial element” test. The act or element that confers venue must be one of several, which as a whole and united together constitute an offense. See Official Revision Comment (b) to Article 611.

. A cashier's check never existed. At the defendant's insistence, the owner of the vessel obtained $15,000 in cash and gave it to the defendant in return for a receipt. Hayes, 01-3193 at p. 2, 837 So.2d at 1196.

. The court explained that the crime of embezzlement is a fraudulent and felonious appropriation of another’s property by the person to whom it has been entrusted or into whose hands it has lawfully come. The gist of the offense is the conversion of the property. It is an essential element of embezzlement that the property charged to be embezzled was lawfully in the accused’s possession by fiduciary relation with the owner. Embezzlement differs from larceny in that the original taking is lawful. The gravamen of the offense is the subsequent felonious conversion of the property with the intent to convert it to the accused's own use. Hayes, 01-3193 at p. 4, 837 So.2d at 1197.

. Hodgkins was also in Virginia when he insisted that the defendant charge his credit card for the move. At the March 14, 2005, hearing (wherein the facts were used for both the preliminary exam and the motion to quash), the following exchange took place between defense counsel and Hodgkins:
Q. And on the 26th ... Let me back up. You had no conversation with anyone on his behalf at his company on the 25th advising them that you were not going to — or you were going to contest any credit card debit that had been made with regard to the five thousand dollars that had been contracted?
A. No, ... Mr. Colbert at that point was insisting upon a cash payment, and I had not made arrangements for a cash payment. Their contract spelled out that I could use a credit card as a form of payment.... They, therefore, then began to refuse to accept the credit card. I was insisting that they honor the contract and accept my credit card as a form of payment. That was the only discussions we had on that date regarding American Express.
Q. So you wanted them to accept your credit card on that date on the 25th, correct?
A. That’s correct. They refused.
*166 [[Image here]]
Q. And where were you when you had this conversation?
A. I was at my new residence in Virginia.
Q. And where was Chris when you had this conversation with him?
A. To the best of my knowledge, he was at their office.
[[Image here]]
Q. So at the time that — on the 25th of July, 03, you had requested that Chris accept a credit card payment and deliver your items; is that correct?
A. That's correct.
Q. And in fact you later learned that on the 25th your credit card had been debited five thousand two hundred eighty-three dollars and thirty-eight cents?
A. I didn’t learn of that until August the 1st, and there was never — they never stopped asking for a cash payment for the delivery of my goods. They continued to refuse to accept any charges to my credit card as acceptance for the payment.
Q. Now, did you later — did you learn that your items on the 25th or the 26th of July were in Virginia in a storage facility?
A. I was told the driver was in Virginia, yes.

. See Hayes (J. Weimer dissenting), 01-3193 at p. 4, 837 So.2d at 1201, where Justice Weimer notes that Article 611 "has absolutely nothing within its language which speaks to a consideration of the impact of a crime.”

. Under La. R.S. 22:1242, a "Fraudulent insurance act” is defined, in pertinent part, as "acts or omissions committed by any person who, knowingly and with intent to defraud: (a) Presents, causes to be presented, or prepares with knowledge or belief that it will be presented to or by any insurer, ... any oral or written statement which he knows to contain materially false information .... ” Joshlin, 99-1004 at p. 5, 752 So.2d at 838.

.The Joshlin court stated:
The locus delicti of the charged offense "must be determined from the nature of the crime alleged and the location of the act or acts constituting it.” In effectuating this inquiry, a court must first identify the conduct of the offense and then discern the location of the commission of the criminal acts. In the identification of the relevant conduct, a court may look to the verbs used in the statute to determine the nature of the substantive offense.
Joshlin, 99-1004 at p. 4, 752 So.2d at 837 (citations omitted).