## UNITED STATES *v.* RODRIGUEZ-MORENO

No. 97–1139.   Argued December 7, 1998—Decided March 30, 1999

THOMAS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. SCALIA, J., filed a dissenting opinion, in which STEVENS, J., joined, *post*, p. 282.

*Paul R. Q. Wolfson* argued the cause for the United States. With him on the briefs were *Solicitor General Waxman, Assistant Attorney General Robinson, Deputy Solicitor General Dreeben,* and *Daniel S. Goodman.*

*John P. McDonald,* by appointment of the Court, 525 U. S. 806, argued the cause for respondent. With him on the brief were *Jeffrey T. Green* and *Robert C. Nissen.*\*

JUSTICE THOMAS delivered the opinion of the Court.

This case presents the question whether venue in a prosecution for using or carrying a firearm "during and in relation to any crime of violence," in violation of 18 U. S. C. § 924(c)(1), is proper in any district where the crime of violence was committed, even if the firearm was used or carried only in a single district.

I

During a drug transaction that took place in Houston, Texas, a New York drug dealer stole 30 kilograms of a Texas drug distributor's cocaine. The distributor hired respondent, Jacinto Rodriguez-Moreno, and others to find the dealer and to hold captive the middleman in the transaction,

---

\**Steven Wisotsky* and *Lisa Kemler* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance.

Ephrain Avendano, during the search. In pursuit of the dealer, the distributor and his henchmen drove from Texas to New Jersey with Avendano in tow. The group used Avendano's New Jersey apartment as a base for their operations for a few days. They soon moved to a house in New York and then to a house in Maryland, taking Avendano with them.

Shortly after respondent and the others arrived at the Maryland house, the owner of the home passed around a .357 magnum revolver and respondent took possession of the pistol. As it became clear that efforts to find the New York drug dealer would not bear fruit, respondent told his employer that he thought they should kill the middleman and end their search for the dealer. He put the gun to the back of Avendano's neck but, at the urging of his cohorts, did not shoot. Avendano eventually escaped through the back door and ran to a neighboring house. The neighbors called the Maryland police, who arrested respondent along with the rest of the kidnapers. The police also seized the .357 magnum, on which they later found respondent's fingerprint.

Rodriguez-Moreno and his codefendants were tried jointly in the United States District Court for the District of New Jersey. Respondent was charged with, *inter alia,* conspiring to kidnap Avendano, kidnaping Avendano, and using and carrying a firearm in relation to the kidnaping of Avendano, in violation of 18 U. S. C. § 924(c)(1). At the conclusion of the Government's case, respondent moved to dismiss the § 924(c)(1) count for lack of venue. He argued that venue was proper only in Maryland, the only place where the Government had proved he had actually used a gun. The District Court denied the motion, App. 54, and the jury found respondent guilty on the kidnaping counts and on the § 924(c)(1) charge as well. He was sentenced to 87 months' imprisonment on the kidnaping charges, and was given a mandatory consecutive term of 60 months' imprisonment for committing the § 924(c)(1) offense.

On a 2-to-1 vote, the Court of Appeals for the Third Circuit reversed respondent's § 924(c)(1) conviction. *United States* v. *Palma-Ruedas,* 121 F. 3d 841 (1997). A majority of the Third Circuit panel applied what it called the "verb test" to § 924(c)(1), and determined that a violation of the statute is committed only in the district where a defendant "uses" or "carries" a firearm. *Id.,* at 849. Accordingly, it concluded that venue for the § 924(c)(1) count was improper in New Jersey even though venue was proper there for the kidnaping of Avendano. The dissenting judge thought that the majority's test relied too much "on grammatical arcana," *id.,* at 865, and argued that the proper approach was to "look at the substance of the statutes in question," *ibid.* In his view, the crime of violence is an essential element of the course of conduct that Congress sought to criminalize in enacting § 924(c)(1), and therefore, "venue for a prosecution under [that] statute lies in any district in which the defendant committed the underlying crime of violence." *Id.,* at 863. The Government petitioned for review on the ground that the Third Circuit's holding was in conflict with a decision of the Court of Appeals for the Fifth Circuit, *United States* v. *Pomranz,* 43 F. 3d 156 (1995). We granted certiorari, 524 U. S. 915 (1998), and now reverse.

## II

Article III of the Constitution requires that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." Art. III, § 2, cl. 3. Its command is reinforced by the Sixth Amendment's requirement that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed," and is echoed by Rule 18 of the Federal Rules of Criminal Procedure ("prosecution shall be had in a district in which the offense was committed").

As we confirmed just last Term, the "'*locus delicti* [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" *United States* v. *Cabrales,* 524 U. S. 1, 6–7 (1998) (quoting *United States* v. *Anderson,* 328 U. S. 699, 703 (1946)).[1] In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.[2] See *Cabrales, supra,* at 6–7; *Travis* v. *United States,* 364 U. S. 631, 635–637 (1961); *United States* v. *Cores,* 356 U. S. 405, 408–409 (1958); *Anderson, supra,* at 703–706.

At the time respondent committed the offense and was tried, 18 U. S. C. § 924(c)(1) provided:

> "Whoever, during and in relation to any crime of violence . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . . be sentenced to imprisonment for five years . . . ."[3]

The Third Circuit, as explained above, looked to the verbs of the statute to determine the nature of the substantive of-

---

[1] When we first announced this test in *United States* v. *Anderson,* 328 U. S., at 703, we were comparing § 11 of the Selective Training and Service Act of 1940, 54 Stat. 894, in which Congress did "not indicate where [it] considered the place of committing the crime to be," 328 U. S., at 703, with statutes where Congress was explicit with respect to venue. Title 18 U. S. C. § 924(c)(1), like the Selective Training and Service Act, does not contain an express venue provision.

[2] The Government argues that venue also may permissibly be based upon the effects of a defendant's conduct in a district other than the one in which the defendant performs the acts constituting the offense. Brief for United States 16–17. Because this case only concerns the *locus delicti,* we express no opinion as to whether the Government's assertion is correct.

[3] The statute recently has been amended, see Pub. L. 105–386, 112 Stat. 3469, but it is not argued that the amendment is in any way relevant to our analysis in this case.

fense. But we have never before held, and decline to do so here, that verbs are the sole consideration in identifying the conduct that constitutes an offense. While the "verb test" certainly has value as an interpretative tool, it cannot be applied rigidly, to the exclusion of other relevant statutory language. The test unduly limits the inquiry into the nature of the offense and thereby creates a danger that certain conduct prohibited by statute will be missed.

In our view, the Third Circuit overlooked an essential conduct element of the § 924(c)(1) offense. Section 924(c)(1) prohibits using or carrying a firearm "during and in relation to any crime of violence . . . for which [a defendant] may be prosecuted in a court of the United States." That the crime of violence element of the statute is embedded in a prepositional phrase and not expressed in verbs does not dissuade us from concluding that a defendant's violent acts are essential conduct elements. To prove the charged § 924(c)(1) violation in this case, the Government was required to show that respondent used a firearm, that he committed all the acts necessary to be subject to punishment for kidnaping (a crime of violence) in a court of the United States, and that he used the gun "during and in relation to" the kidnaping of Avendano. In sum, we interpret § 924(c)(1) to contain two distinct conduct elements—as is relevant to this case, the "using and carrying" of a gun and the commission of a kidnaping.[4]

---

[4] By way of comparison, last Term in *United States* v. *Cabrales*, 524 U. S. 1 (1998), we considered whether venue for money laundering, in violation of 18 U. S. C. §§ 1956(a)(1)(B)(ii) and 1957, was proper in Missouri, where the laundered proceeds were unlawfully generated, or rather, only in Florida, where the prohibited laundering transactions occurred. As we interpreted the laundering statutes at issue, they did not proscribe "the anterior criminal conduct that yielded the funds allegedly laundered." *Cabrales*, 524 U. S., at 7. The existence of criminally generated proceeds was a circumstance element of the offense but the proscribed conduct— defendant's money laundering activity—occurred "'after the fact' of an offense begun and completed by others." *Ibid.* Here, by contrast, given

Respondent, however, argues that for venue purposes "the New Jersey kidnapping is completely irrelevant to the firearm crime, because respondent did not *use* or *carry* a gun *during* the New Jersey crime." Brief for Respondent 12. In the words of one *amicus*, § 924(c)(1) is a "point-in-time" offense that only is committed in the place where the kidnaping and the use of a gun coincide. Brief for National Association of Criminal Defense Lawyers as *Amicus Curiae* 11. We disagree. Several Circuits have determined that kidnaping, as defined by 18 U. S. C. § 1201 (1994 ed. and Supp. III), is a unitary crime, see *United States* v. *Seals*, 130 F. 3d 451, 461–462 (CADC 1997); *United States* v. *Denny-Shaffer*, 2 F. 3d 999, 1018–1019 (CA10 1993); *United States* v. *Godinez*, 998 F. 2d 471, 473 (CA7 1993); *United States* v. *Garcia*, 854 F. 2d 340, 343–344 (CA9 1988), and we agree with their conclusion. A kidnaping, once begun, does not end until the victim is free. It does not make sense, then, to speak of it in discrete geographic fragments. Section 924(c)(1) criminalized a defendant's use of a firearm "during and in relation to" a crime of violence; in doing so, Congress proscribed both the use of the firearm *and* the commission of acts that constitute a violent crime. It does not matter that respondent used the .357 magnum revolver, as the Government concedes, only in Maryland because he did so "during and in relation to" a kidnaping that was begun in Texas and continued in New York, New Jersey, and Maryland. In our view, § 924(c)(1) does not define a "point-in-time" offense when a firearm is used during and in relation to a continuing crime of violence.

As we said in *United States* v. *Lombardo*, 241 U. S. 73 (1916), "where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done." *Id.*, at 77; cf. *Hyde* v. *United States*, 225 U. S. 347, 356–367 (1912) (venue proper

---

the "during and in relation to" language, the underlying crime of violence is a critical part of the § 924(c)(1) offense.

against defendant in district where co-conspirator carried out overt acts even though there was no evidence that the defendant had ever entered that district or that the conspiracy was formed there). The kidnaping, to which the § 924(c)(1) offense is attached, was committed in all of the places that any part of it took place, and venue for the kidnaping charge against respondent was appropriate in any of them. (Congress has provided that continuing offenses can be tried "in any district in which such offense was begun, continued, or completed," 18 U. S. C. § 3237(a).) Where venue is appropriate for the underlying crime of violence, so too it is for the § 924(c)(1) offense. As the kidnaping was properly tried in New Jersey, the § 924(c)(1) offense could be tried there as well.

\* \* \*

We hold that venue for this prosecution was proper in the district where it was brought. The judgment of the Court of Appeals is therefore reversed.

*It is so ordered.*

JUSTICE SCALIA, with whom JUSTICE STEVENS joins, dissenting.

I agree with the Court that in deciding where a crime was committed for purposes of the venue provision of Article III, § 2, of the Constitution, and the vicinage provision of the Sixth Amendment, we must look at "the nature of the crime alleged and the location of the act or acts constituting it." *Ante,* at 279 (quoting *United States* v. *Cabrales,* 524 U. S. 1, 7 (1998), in turn quoting *United States* v. *Anderson,* 328 U. S. 699, 703 (1946)) (internal quotation marks omitted). I disagree with the Court, however, that the crime defined in 18 U. S. C. § 924(c)(1) is "committed" either where the defendant commits the predicate offense or where he uses or carries the gun. It seems to me unmistakably clear from the text of the law that this crime can be committed only where the

defendant *both* engages in the acts making up the predicate offense *and* uses or carries the gun.

At the time of respondent's alleged offense, §924(c)(1) read:

> "Whoever, during and in relation to any crime of violence or drug trafficking crime . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years."

This prohibits the act of using or carrying a firearm "during" (and in relation to) a predicate offense. The provisions of the United States Code defining the particular predicate offenses already punish all of the defendant's alleged criminal conduct except his use or carriage of a gun; §924(c)(1) itself criminalizes and punishes such use or carriage "during" the predicate crime, because that makes the crime more dangerous. Cf. *Muscarello* v. *United States*, 524 U. S. 125, 132 (1998). This is a simple concept, and it is embodied in a straightforward text. To answer the question before us we need only ask where the defendant's alleged act of using a firearm during (and in relation to) a kidnaping occurred. Since it occurred only in Maryland, venue will lie only there.

The Court, however, relies on *United States* v. *Lombardo*, 241 U. S. 73, 77 (1916), for the proposition that " 'where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done.' " *Ante*, at 281. The fallacy in this reliance is that the crime before us does *not* consist of "distinct" parts that can occur in different localities. Its two parts are bound inseparably together by the word "during." Where the gun is being used, the predicate act must be occurring as well, and vice versa. The Court quite simply reads this requirement out of the statute—as though there were no difference between a statute making it a crime to steal a cookie

and eat it (which could be prosecuted either in New Jersey, where the cookie was stolen, or in Maryland, where it was eaten) and a statute making it a crime to eat a cookie while robbing a bakery (which could be prosecuted only where the ingestive theft occurred).

The Court believes its holding is justified by the continuing nature of the kidnaping predicate offense, which invokes the statute providing that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U. S. C. § 3237(a). To disallow the New Jersey prosecution here, the Court suggests, is to convert § 924(c)(1) from a continuing offense to a "point-in-time" offense. *Ante,* at 281. That is simply not so. I in no way contend that the kidnaping, or, for that matter, the use of the gun, can occur only at one point in time. Each can extend over a protracted period, and in many places. But § 924(c)(1) is violated only so long as, *and where,* both continuing acts are being committed simultaneously. That is what the word "during" means. Thus, if the defendant here had used or carried the gun throughout the kidnaping, in Texas, New Jersey, New York, and Maryland, he could have been prosecuted in any of those States. As it was, however, he used a gun during a kidnaping only in Maryland.

Finally, the Government contends that focusing on the "use or carry" element of § 924(c)(1) is "difficult to square" with the cases holding that there can be only one § 924(c)(1) violation for each predicate offense. Reply Brief for United States 9 (citing *United States* v. *Palma-Ruedas,* 121 F. 3d 841, 862–863 (CA3 1997) (Alito, J., concurring in part and dissenting in part) (case below)). See, *e. g., United States* v. *Anderson,* 59 F. 3d 1323, 1328–1334 (CADC) (en banc), cert. denied, 516 U. S. 999 (1995); *United States* v. *Taylor,* 13 F. 3d 986, 992–994 (CA6 1994); *United States* v. *Lindsay,* 985 F. 2d 666, 672–676 (CA2), cert. denied, 510 U. S. 832 (1993). This

is an odd argument for the Government to make, since it has disagreed with those cases, see, *e. g., Anderson, supra,* at 1328; *Lindsay, supra,* at 674, and has succeeded in persuading two Circuits to the contrary, see *United States* v. *Camps,* 32 F. 3d 102, 106–109 (CA4 1994), cert. denied, 513 U. S. 1158 (1995); *United States* v. *Lucas,* 932 F. 2d 1210, 1222–1223 (CA8), cert. denied *sub nom. Shakur, aka Tyler* v. *United States,* 502 U. S. 869 (1991). But this dispute has nothing to do with the point before us here. I do not contend that using the firearm is "the entire essence of the offense." Reply Brief for United States 9. The predicate offense is assuredly an element of the crime—and if, for whatever reason, that element has the effect of limiting prosecution to one violation per predicate offense, it can do so just as effectively even if the "during" requirement is observed rather than ignored.

The short of the matter is that this defendant, who has a constitutional right to be tried in the State and district where his alleged crime was "committed," U. S. Const., Art. III, § 2, cl. 3; Amdt. 6, has been prosecuted for using a gun during a kidnaping in a State and district where all agree he did not use a gun during a kidnaping. If to state this case is not to decide it, the law has departed further from the meaning of language than is appropriate for a government that is supposed to rule (and to be restrained) through the written word.