**UNITED STATES of America**

**v.**

**Corey KEMP, et al.**

**Criminal Action Nos. 04–370–02, 04–370–03, 040370–04, 04–370–05, 04–370–06.**

United States District Court, E.D. Pennsylvania.

March 29, 2005.

Christopher D. Warren, Feldman and Pinto, Media, PA, Lloyd G. Parry, Davis, Parry, Tyler & Wright, Philadelphia, PA, Michael J. McGovern, Monteverde, McAlee, Fitzpatrick, Tanker & Hurd, Philadelphia, PA, William R. Spade, Jr., Davis, Parry & Tyler, Philadelphia, PA, The

Law Offices of William Spade, Scott Godshall, List & List, Nino V. Tinari, Catherine M. Recker, Lisa A. Mathewson, Welsh & Recker, P.C., Thomas H. Suddath, Jr., Lathrop B. Nelson, III, Montgomery McCracken Walker and Rhoads, L.L.P., William A. Destefano, Terri A. Pawelski, Saul Ewing LLP, Jeffrey M. Lindy, Joel Harvey Slomsky, Joel Harvey Slomsky, Esquire, Joseph P. Grimes, Grimes and Grimes, Philadelphia, PA, Edwin J. Jacobs, Jr., Jacobs and Barbone, Atlantic City, NJ, Christopher G. Furlong, Law Offices of Christopher G. Furlong, Media, PA, Kevin H. Marino, Marino & Associates, P.C., Lawrence S. Lustberg, Crummy, Del Deo, Dolan, Griffinger and Vecchione, Newark, NJ, Anthony T. Chambers, Detroit, MI, Lewis Myers, Jr., Chicago, IL, Nathaniel E. Jones, Jr., Jones & Associates, P.C., Baltimore, MD, Glenn K. Holck, Kevin H. Marino, Marion & Associates, P.C., Newark, NJ, for Defendants.

Michael A. Schwartz, Richard J. Zack, Robert A. Zauzmer, Catherine Votaw, Joseph F. Minni, Joan L. Markman, William B. Carr, Jr., United States Attorney's Office, Philadelphia, PA, for Plaintiff.

## MEMORANDUM RE: GOVERNMENT MOTIONS

BAYLSON, District Judge.

The government has filed two motions in the middle of this complex political corruption case charging several Defendants with conspiracy to deny the citizens of Philadelphia of the honest services of Defendant Corey Kemp, former City Treasurer, and other crimes. The Court has issued a number of prior Memoranda which explain the factual background of the case, which will not be repeated here. The Court also notes that this Memorandum is being prepared in the middle of a lengthy trial, and thus will not extensively discuss the case

law, but all issues presented by the parties have been considered.

### A. *Government's Motion in Limine to Preclude Defense*

The government has moved in limine to preclude a defense by Defendants Glenn K. Holck and Stephen M. Umbrell of presenting evidence of "consciousness of innocence," and investigative circumstances including Holck's discussion with a lawyer recommended by the FBI.

In opposition, Holck and Umbrell assert that their evidence is admissible, that their counsel's opening argument to the jury, which was not stricken by the Court, is itself reason to allow this evidence to go forward, and furthermore, that the cases relied on by the government are distinguishable. Fundamentally, they assert they should have the right to present evidence of consciousness of innocence and evidence that would support an argument that the prosecution was rushed and the investigation incomplete. They disclaim any intent to show that the prosecution is vindictive, but do assert that unspecified improper motives have influenced the government and/or the grand jury.

■ 1. Initially, the Court rejects as an extreme form of "bootstrapping" the Defendants' argument that because this purported defense was raised in their counsel's opening argument to the jury without an objection by the government being upheld by the Court, it has necessarily been approved. Defendants assert they must be allowed to present the evidence or else a reviewing court may, if the Defendants are convicted, find that defense counsel were ineffective for having made an argument they could not support with evidence. There is absolutely no legal support for such a position, and carried to its logical extreme, would encourage

defense counsel to include clearly inadmissible evidence in their opening arguments because their failure to follow through with supporting evidence would automatically entitle their clients to a new trial and/or post-conviction remedy. This argument would also force trial judges to determine admissibility as of the time of the opening argument—a novel concept.

Defendants' reliance on *McAleese v. Mazurkiewicz*, 1 F.3d 159 (3d Cir.1993), where the Third Circuit reversed the district court's order granting a prisoner a writ of habeas corpus, is not persuasive. The court ruled that the prisoner failed to demonstrate ineffective assistance of trial counsel. At trial, defense counsel told the jury in his opening that a certain alibi witness would testify; counsel later elected not to call this witness. On review, the Third Circuit held that this decision reflected a sound trial strategy, but the court also added dictum, with citation to a case with very different facts, that "[t]he failure of counsel to produce evidence which he promised the jury during his opening statement that he would produce is indeed a damaging failure sufficient of itself to support a claim of ineffectiveness of counsel." *Id.* at 166.

In this case, defense counsel did not seek a pretrial ruling and gave neither the government nor the Court any real advance notice of its intent to argue to the jury about this evidence. The government had no chance to move to preclude the argument and the Court had no chance to consider the law. Thus, the Court's overruling the government's objection did not constitute a ruling on the merits of this argument. Experienced defense counsel had reason to know the evidence supporting their argument was of doubtful admissibility. The Court may instruct the jury to ignore counsel's argument.

■ 2. Holck denies that he is suggesting a vindictive prosecution, rather a rushed and uninformed prosecution. Whatever the characterization, the law does not allow a trial jury to consider such pre-indictment governmental conduct. Any such contention must be made by pretrial motion, which was not filed, and the Court infers it was not filed because defense counsel in this case are well aware of the huge burden that a Defendant carries to prove such an allegation. *United States v. Berrigan*, 482 F.2d 171, 175 (3d Cir.1973); *United States v. Oliver*, 787 F.2d 124 (3d Cir.1986).

■ 3. As to the contention that evidence of "consciousness of innocence" is admissible, the Court holds *United States v. Hernandez*, 176 F.3d 719 (3d Cir.1999), and *United States v. Smith*, 186 F.3d 290, 293 n. 1 (3d Cir.1999) prohibit such evidence, and the Third Circuit has not adopted, and will not adopt, the holding in *United States. v. Biaggi*, 909 F.2d 662 (2d Cir.1990), on which Defendants rely. Defendants' own assertions of their innocence after they were confronted are self-serving, hearsay, and not admissible. Third-party statements, even if repeated in court, are hearsay and not admissible under Fed.R.Evid. 803(3). Defendants' counsel's attempt to distinguish *Hernandez* because the crime charged there was not a "specific intent" case fails because the Third Circuit's holding is not limited to the specific type of crime alleged.

■ 4. Holck wishes to introduce evidence concerning the advice given to him by an attorney recommended by the FBI, who Holck briefly retained and who accompanied Holck to an initial meeting in the U.S. Attorney's Office. The Court will not allow either Holck, or the attorney, to testify as to their discussions after Holck was confronted by the FBI.[1] There is no

---

1. The Court did allow defense counsel to take

the deposition of the FBI agent who confront-

case support for a defendant in a criminal case to reiterate his attorney's opinion as to his guilt or innocence. The attorney's statement would be hearsay, and both Holck's and the attorney's testimony is not relevant.

5. Defendants cite several cases to support their effort to introduce evidence of their state of mind as a proper defense to the government's use of evidence to prove a consciousness of guilt. However, the cases cited do not support the proposition.

■ In *United States v. Trala,* 386 F.3d 536 (3d. Cir.2004), the Third Circuit affirmed the conviction of a defendant found guilty by a jury of bank robbery, conspiracy to commit bank robbery, and use of a firearm during a crime of violence. At the time of his arrest following a car stop, the defendant was deliberately misidentified by a friend who was also in the car. Over a hearsay objection, the district court admitted the misidentification not for its truth, but as relevant to show the defendant's consciousness of guilt. *Id.* at 545 (citing *United States v. Palma–Ruedas,* 121 F.3d 841 (3d Cir.1997), *rev'd on other grounds,* 526 U.S. 275, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999) (holding that a false statement made by a third party "was probative regarding consciousness of guilt because the jury could have reasonably inferred that [the defendant] welcomed [the third party's] misidentification of him.")). The court in *Trala* ruled that it was error to introduce the statement, but only because it was unclear whether the defendant could have heard—and there-

fore adopted—the statement. The court in no way disturbed its earlier holding in *Palma–Ruedas* that an otherwise hearsay statement may be introduced for the limited purpose of demonstrating consciousness of guilt.[2]

In *United States v. DeSantis,* 134 F.3d 760 (6th Cir.1998), the defendant appealed his conviction for mail and securities fraud (among other charges). Defendant was accused of defrauding numerous investors in certain properties. The Sixth Circuit reversed the fraud conviction on several grounds. One of the grounds for reversal was that the district court improperly admitted the testimony of the defendant's business associate who testified regarding the allegedly fraudulent deals. While noting that the prosecution should be given "wide latitude" to prove specific intent, the defense should be given "equal flexibility." *Id* at 768. The Sixth Circuit concluded that this witness's testimony was irrelevant and went only to the defendant's character and credibility (neither of which had been placed at issue). *Id.* at 768. There is nothing in this case pertaining to evidence of consciousness of innocence.

In *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), the Supreme Court vacated the conviction of a defendant charged with tax evasion because the district court improperly instructed the jury that the defendant's good-faith belief that he had no duty to pay taxes was only a defense if such a belief was objectively reasonable. The Supreme Court, however, found it possible

---

ed Holck because he was going out of the country. Most of this deposition developed inadmissible evidence.

**2.** Although the case law does not discuss the import of the presumption of innocence on a defendant's assertion of consciousness of innocence, the two concepts are closely related, if not synonymous. Courts need not allow a

defendant to introduce evidence of consciousness of innocence because the presumption of innocence provides the same protection. The cases allow the government to present evidence of consciousness of guilt as part of its burden of proof, to overcome the presumption of innocence.

that a defendant could hold "an irrational belief that he has no duty [to pay taxes], and forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision." *Id.* at 203, 111 S.Ct. 604.

■ This decision does not open the door to evidence of consciousness of innocence in a criminal prosecution requiring the government to prove criminal intent.[3] As noted in the concurring opinion of Justice Scalia in *Cheek,* tax prosecutions employ a unique standard of proof, and allow a unique defense. 498 U.S. at 207–209, 111 S.Ct. 604. The defense can counter the government's evidence of intent in this case by showing that the Defendants' conduct with regard to White and Kemp, as relevant to the allegations of the indictment, was in accord with Commerce Bank's regulations pertaining to the type of transactions which are the subject matter of this case. The Defendants, of course, may testify to their own lack of intent at the time of the transactions at issue. Other evidence of consciousness of innocence is not admissible.

## B. *Government's Motion to Present Evidence of Commerce Loans*

■ The government has also moved to present evidence regarding Commerce loans, other than the loan to Kemp. Defendants Holck and Umbrell vigorously object to this motion on which the Court has had several arguments during the course of the trial. Briefly, the government wants to present evidence that an FBI agent reviewed more than 3,700 loan files in a four-month period at the time Commerce Bank granted a mortgage loan to Defendant Kemp. The government asserts that Kemp's FICO score was the lowest of any applicant of the thousands of applications reviewed; that Kemp's first loan application was one of only twenty which was rated "refer with caution IV," the lowest designation afforded by a computer-based underwriting program; but that Kemp's loan was only one of two out of the twenty which had the rating "refer with caution IV" but was nonetheless granted 100% financing. The government would also introduce evidence that the other one of these two loans was made to a relative of Mayor Street.

There has been extensive testimony at trial as to the circumstances under which Commerce Bank made a loan to Kemp for 100% of the value of a home he had purchased near Reading, Pennsylvania, including evidence that would allow a jury to find that some favoritism was given to Kemp because of his position as City Treasurer. The Court agrees that the testimony which the government proffers would be probative to show that the loan made to Kemp was highly favorable compared to other loans which Commerce Bank made at or about the same time, and that this may be evidence to show that Holck and Umbrell conspired with White and Kemp as charged in the indictment.

However, opening the door to this evidence would allow Holck and Umbrell to present their own selection of loans, perhaps with a longer time period, and to present to the jury extensive evidence as

---

3. In *United States v. Hedaithy,* 392 F.3d 580 (3d Cir.2004), the two defendants were convicted of conspiracy to commit mail fraud. In affirming their convictions, the Third Circuit reviewed the elements of mail or wire fraud, as articulated in *United States v. Antico,* 275 F.3d 245, 261 (3d Cir.2001): "the evidence must establish beyond a reasonable doubt (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails or interstate wire communications in furtherance of the scheme."

to the circumstances under which these other loans were made and reasons why some loans were made or were not made. Holck and Umbrell may have evidence that Commerce Bank did not grant loans to certain individuals with much higher FICO scores than Kemp, and also denied loans to relations of politically connected individuals and/or Commerce Board members.

The Court does not believe it can easily draw a line, if the government's evidence is allowed to be introduced, where Holck and Umbrell would have to stop in cross examining the FBI agent and/or presenting their own evidence to challenge the government's selections of the loans that were examined by the FBI agent. The Court finds under Rule 403 that although the government's evidence is probative, it should be excluded because of danger of confusion of issues or misleading the jury—arising from the comparison of many loans to the Kemp loan—or undue delay. The latter point is important in view of the estimate of the time the Court was told the government's case would take, and the jury was told this trial would take. The Court therefore also concludes that allowing this evidence would unduly delay the termination of the trial, when considering what evidence Holck and Umbrell would be allowed to present.

The Court has allowed testimony as to whether Commerce Bank's specified procedures were or were not followed in connection with the Kemp loan, but has intended to preclude testimony as to whether the procedures used on the Kemp loan were "unusual," believing that there is an appropriate evidentiary line between what is improper under a bank's established procedures, and what may be "unusual," because the latter includes comparison of the Kemp loan with other loans.

In the alternative, the government has moved to strike certain testimony elicited by Holck and Umbrell from certain witnesses as to whether the Kemp loan was "unusual." Having ruled to deny the government's motion to present their evidence, the Court nonetheless notes that there has been some limited evidence presented by both sides, from various witnesses, as to whether the Kemp loan was "unusual," and whether the waiving of certain conditions, such as the rating "refer with caution IV," was unusual. The Court will take this issue under advisement at this time, and invites further argument at an appropriate point in the trial, and also requests counsel to consider whether the Court should charge the jury as to the difference between "improper" and "unusual" in connection with the Kemp loan.

An appropriate Order follows.

### TRIAL ORDER NO. 19

AND NOW, this 29th day of March, 2005, it is hereby ORDERED as follows:

1. The government's Motion in Limine to Preclude Defense (Doc. No. 319) is GRANTED.

2. The government's Motion to Present Evidence Regarding Commerce Loans (Doc. No. 544) is DENIED as to the government's case in chief, but otherwise denied without prejudice.