In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2672

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

JULIO LEIJA-SANCHEZ,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CR 224—**Rebecca R. Pallmeyer**, *Judge*.

ARGUED FEBRUARY 12, 2010—DECIDED APRIL 8, 2010

Before EASTERBROOK, *Chief Judge*, HAMILTON,
*Circuit Judge*, and SPRINGMANN, *District Judge*.[†]

EASTERBROOK, *Chief Judge*. An indictment returned in
2007 alleges that Julio Leija-Sanchez was the kingpin of
an organization that produced fraudulent Social Security
cards, driver's licenses, green cards, and other documents
for aliens living in the United States unlawfully. The

[†] Of the Northern District of Indiana, sitting by designation.

prosecutor believes that the organization generated revenues exceeding $2.5 million a year. The indictment alleges that many of the organization's employees and future customers were recruited in Mexico and smuggled into this country.

Leija-Sanchez moved to dismiss Count III, which charges him with violating 18 U.S.C. §1959 by arranging and paying for the murder of Guillermo Jimenez Flores (known as Montes), a former employee who had gone into competition with his organization. Assassins in Leija-Sanchez's employ found Montes in Mexico and killed him there. Montes was a Mexican citizen; so are the assassins. The district court dismissed this count, concluding that §1959 does not apply extraterritorially. The United States has appealed under 18 U.S.C. §3731 ¶1. Meanwhile the rest of the criminal prosecution is in abeyance.

The prosecutor relies on *United States v. Bowman*, 260 U.S. 94 (1922), for the proposition that criminal statutes apply even when one or more elements occurs abroad or on the high seas. See also *United States v. Vasquez-Velasco*, 15 F.3d 833 (9th Cir. 1994). Leija-Sanchez contends that *Bowman* is no longer good law, in light of *EEOC v. Arabian American Oil Co.*, 499 U.S. 244 (1991) (*Aramco*), and other decisions establishing a presumption that civil statutes do not apply to activity outside the United States. What *Bowman* had said is that "the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the Government's jurisdiction". 260 U.S. at 98.

Civil decisions such as *Aramco* cannot implicitly overrule a decision holding that criminal statutes are applied differently. The main reason for requiring a clear legislative decision before applying a civil statute to activity outside our borders is that nations often differ with respect to acceptable conduct. See 499 U.S. at 248. Title VII of the Civil Rights Act of 1964, the statute at issue in *Aramco*, forbids religious discrimination, but other nations may impose religious tests. After Aramco discharged one of its workers in Saudi Arabia, the EEOC contended that Aramco (which has its headquarters in the United States) must apply Title VII to its work force worldwide. The Supreme Court concluded that the law of the place of employment governs; that way employers can comply fully with the laws of all nations where they conduct operations. (A contrary conclusion might have had the practical effect of ending the multinational operations of businesses based in the United States, or forcing them to move their headquarters to some other nation.)

Nations differ in the way they treat the role of religion in employment; they do not differ to the same extent in the way they treat murder. They may use different approaches to defenses, burdens of proof and persuasion, the role of premeditation, and punishment, but none of these is at stake here. It is not as if murder were forbidden by U.S. law but required (or even tolerated) by Mexican law. The crime in *Bowman* was fraud; the Court observed that fraud was unlawful in all of the places where Bowman's scheme was implemented.

Whether or not *Aramco* and other post-1922 decisions are in tension with *Bowman*, we must apply *Bowman* until the Justices themselves overrule it. "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions*." Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989). See also, e.g., *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). The Supreme Court has neither overruled *Bowman* nor suggested that the courts of appeals are free to reconsider its conclusion.

*Bowman* does not hold that criminal statutes *always* apply extraterritorially. It concludes that judges must consider the language and function of the prohibition. The statute in *Bowman* was designed to prevent fraud by military contractors during and in the aftermath of World War I. The Justices observed that, because military operations in that war took place throughout the world, the statute must reach frauds hatched abroad. The United States makes a similar argument about §1959, which provides:

> (a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims,

assaults with a dangerous weapon, commits as-
sault resulting in serious bodily injury upon, or
threatens to commit a crime of violence against
any individual in violation of the laws of any State
or the United States, or attempts or conspires so
to do, shall be punished—[details omitted].

(b) As used in this section—

> (1) "racketeering activity" has the meaning set
> forth in section 1961 of this title; and

> (2) "enterprise" includes any partnership,
> corporation, association, or other legal entity,
> and any union or group of individuals associ-
> ated in fact although not a legal entity, which
> is engaged in, or the activities of which affect,
> interstate or foreign commerce.

Criminal businesses may be international in scope; the
indictment alleges that Leija-Sanchez's organization
was. Section 1959 applies to enterprises that engage in
or affect "foreign commerce"; this rule cannot be imple-
mented if the existence of activities abroad prevents
application of §1959 to those acts and effects that occur
in the United States.

Leija-Sanchez assumes that a crime happens in one
place only—wherever the last element occurs. The final
element of Count III was the murder in Mexico, so on this
understanding the crime was "in" Mexico. The view that
a crime necessarily has just one situs has its basis in the
common law, see Wayne R. LaFave, *Substantive Criminal
Law* §§ 4.2(d), 4.4 (2d ed. 2003), but has been modified by

statute. Suppose Leija-Sanchez had arranged in Illinois for Montes to be killed in Texas. He could have been prosecuted in *either* state for that offense, because elements occurred in each. See 18 U.S.C. §3237(a) ¶1 (crime "begun in one district and completed in another, or committed in more than one district" may be prosecuted "in any district in which [it] was begun, continued, or completed."); *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999).

If a crime occurs in the state where it is arranged and paid for when the killing occurs in Texas, it equally occurs in the state where it was planned when the murder is accomplished in Mexico. Because §1959 forbids attempts as well as completed crimes, Leija-Sanchez could be found culpable under that statute even if Montes had survived. (Putting out the contract, and arranging for payment, are substantial steps that could support a conviction for attempt.) Section 1959 forbids certain acts in furtherance of a racketeering enterprise; the §1959 offense is not murder (or some other crime) in isolation, but the multiple acts by which a crime such as murder facilitates a criminal enterprise. And many of those acts, as well as the enterprise that Leija-Sanchez sought to advance, were located in Illinois.

*Bowman* itself shows that the Supreme Court does not use a "last act" rule for defining a crime's location. The master of a vessel indirectly owned by the United States decided to enrich himself by overbilling for expenses. While in the port of Rio de Janeiro, the master bribed a supplier to give a receipt showing that the vessel had

loaded (and paid for) twice as much fuel oil as it actually purchased. The receipts were submitted by telegram from the ship while at sea, and the Treasury paid too much for the fuel. The last act of this scheme, cashing the Treasury's check, likely occurred in the United States (*Bowman* is not clear on this), and at all events the injury occurred in the United States, whose funds were depleted. Yet *Bowman* thought that there was a question about extraterritorial application because *some* of the elements occurred in Brazil or at sea. The Court concluded that U.S. law applies even though essential steps occurred outside its borders.

Likewise here: some of the acts (planning and payment) occurred in the United States, one (the killing) occurred abroad; and the objective (reduced competition for Leija-Sanchez's syndicate) was realized in the United States. See also *Pasquantino v. United States*, 544 U.S. 349 (2005) (use of federal wire fraud statute to block interstate communications, in the United States, designed to defraud Canada of tax revenues is not an impermissible extraterritorial application); *Ford v. United States*, 273 U.S. 593, 622–24 (1927) (if a criminal enterprise is carried out in part within the United States, all of the participants, including foreigners whose activities were entirely outside the United States, may be penalized). Cf. *Pinkerton v. United States*, 328 U.S. 640, 647 (1946); *United States v. Macey*, 8 F.3d 462, 468 (7th Cir. 1993).

Even in civil litigation, the Supreme Court has held that the laws of this nation may be applied to multi-national operations that have substantial effects in this nation. For

example, *F. Hoffmann-La Roche Ltd v. Empagran S.A.*, 542 U.S. 155 (2004), concludes that this nation's antitrust laws apply to the domestic effects of foreign cartels— though not to foreign effects that are independent of the domestic effects. When an international cartel has effects both within and without our borders, American law applies to at least the domestic effects, even when many (if not all) of the acts producing those adverse effects occur abroad. The Court thought that this approach adequately avoided unnecessary interference with other nations' laws, which may tolerate (within their own territories) effects that our antitrust laws condemn, while ensuring that this nation can achieve its own ends within its territory. Cf. *Restatement (Third) of Foreign Relations* §402(1) (concluding that the United States may apply its law to conduct that either takes place "in substantial part" within the United States or has a "substantial effect" in this nation).

The indictment alleges that Leija-Sanchez's conduct took place "in substantial part" in this nation—indeed, *all* of the conduct ascribed to Leija-Sanchez took place here. And the indictment alleges that the goal of the contract killing was to advance Leija-Sanchez's interests in this country by curtailing competition to his criminal organization. This is not an antitrust case; the United States is not trying to preserve competition in the business of producing bogus credentials, so that aliens can buy phony documents at lower prices. Federal policy is instead to stamp out counterfeit-document mills. But the principle of *Hoffmann-La Roche* that the United States may redress effects in this nation of conduct abroad still

applies. By rubbing out Montes, Leija-Sanchez removed not only a rival (allowing him to charge higher prices for his illegal wares) but also a potential witness in a prosecution such as this one. So we have both significant conduct in the United States and significant consequences here. Applying §1959 to this contract killing does not violate any rule of international law and is compatible with the norms that govern the application of criminal statutes to international criminal enterprises.

Any international repercussions of the decision to prosecute Leija-Sanchez are for the political branches to resolve with their counterparts in Mexico, rather than matters for the judicial branch. That diplomacy has occurred already. Leija-Sanchez fled to Mexico, which extradited him to the United States to face all of the indictment's charges. The United States promised not to seek or impose the death penalty for the murder; Mexico was satisfied with that undertaking and saw no reason why the United States should not apply its substantive rules. Given the holding of *United States v. Alvarez-Machain*, 504 U.S. 655 (1992), that prosecution in the United States is permissible even if the defendant arrives by kidnapping rather than formal extradition, this prosecution is easy to support. The substantive offense in *Alvarez-Machain* was the murder in Mexico, by a Mexican national, of two persons who were helping to enforce U.S. drug laws; the statute said to be violated in *Alvarez-Machain* was 18 U.S.C. §1959, because the murders helped an international drug ring continue in business. The Supreme Court was not asked to hold in *Alvarez-Machain* that applying §1959 in this fashion would have

been impermissibly extraterritorial, so its decision is not direct authority. But we conclude that what the parties assumed in *Alvarez-Machain*—that §1959 applies to a murder in another nation designed to facilitate the operation of a criminal enterprise in the United States—is indeed the law.

REVERSED