[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10274
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 14, 2012
JOHN LEY
CLERK

D. C. Docket No. 4:10-cr-00047-RH-WCS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOCELYN TANNAZY JOHN,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(May 14, 2012)


Before EDMONDSON, BARKETT, and MARCUS, Circuit Judges.


PER CURIAM:

Jocelyn Tannazy John appeals her conviction for knowingly making a materially false statement in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"), in violation of 18 U.S.C. § 1001(a), for which she was sentenced to 12 months' probation. Reversible error has been shown; we vacate John's conviction and sentence.

While working as a bank employee, John accepted $1000 from a bank customer named Ali Hassan Hammoud who -- as it turned out -- was involved in transferring fraudulently $5.7 million from the Florida state treasury into his own bank account. As part of an investigation of Hammoud's wire fraud scheme, which was being prosecuted in the Northern District of Florida, an FBI agent interviewed John to determine the nature of her involvement in the fraud[1] and to assess her credibility as a potential government witness. During that interview, which took place at John's home in Miami, John denied having received money from Hammoud. But John later admitted in Miami that she had received money from Hammoud and signed in Miami a written statement describing her acceptance of the money. Despite her connection to the Southern District, John was then indicted and tried in the Northern District of Florida.

---

[1]Nothing evidences that John was involved in the fraud, and she was not charged with conspiracy.

On appeal, John asserts that venue was improper in the Northern District of Florida because she made her false statement to the FBI agent -- all her pre-indictment statements, really -- while she was in the Southern District of Florida. From this record, John -- for all we know -- had never been in the Northern District of Florida, placed a call to anyone in the Northern District of Florida, or mailed or sent anything to the Northern District of Florida before she was indicted. When venue is challenged, we must determine "'whether, viewing the evidence in the light most favorable to the government . . . the Government proved by a preponderance of the evidence' that the crimes occurred in the district in which the defendant was prosecuted." United States v. Breitweiser, 357 F.3d 1249, 1253 (11th Cir. 2004).

The United States Constitution, in two different places, guarantees a defendant the right to be prosecuted in the district where the alleged offense was committed. See U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI. We believe this right to be tried where one allegedly did wrong is an important one for defendants. The right is restated in Federal Rule of Criminal Procedure 18. For offenses that are "begun in one district and completed in another," venue is proper in "any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237. But for crimes that "began, continued, and were completed"

3

within one district, venue is proper only in that district. See United States v. Cabrales, 118 S. Ct. 1772, 1776 (1998).

"The locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it." Id. Thus, to determine where an offense was committed, "a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." United States v. Rodriguez-Moreno, 119 S. Ct. 1239, 1242-43 (1999). The "essential conduct elements" of the offense are determined from the statutory language. Id. at 1243.

The Tenth Circuit has concluded recently that, for purposes of venue under section 1001(a), "the locus delecti is where the defendant makes the false statement." United States v. Smith, 641 F.3d 1200, 1207 (10th Cir. 2011). We agree.[2] Section 1001(a) prohibits "knowingly and willfully . . . mak[ing] any materially false, fictitious, or fraudulent statement or representation" in a matter within the jurisdiction of the United States government. The statute contains no

---

[2]In determining that venue was proper in the Northern District of Florida, the district court relied on the Seventh Circuit's decision in United States v. Ringer, 300 F.3d 788 (7th Cir. 2002), which concluded that venue under section 1001(a) was proper both in the district where the false statement was made and in the district where events took place "which were critical to proving the elements of the false statement case against Ringer." Ringer at 791. The facts in Ringer -- where Ringer (and his tale from beginning to end) had considerable pertinent personal contact with the district in which he was tried -- are materially different from those in John's case; we decline to use the Seventh Circuit's supposed wider rule to affirm in this case.

4

separate venue provision, and the only "essential conduct" prohibited by the statute is the making of a false statement. Thus, venue is proper only in the district or districts where the defendant made the false statement.

Here, John's false statement was made and received by an FBI agent entirely inside the Southern District of Florida. Even if we assume -- without deciding -- that John's statement was material to a government investigation in the Northern District of Florida, John's own offense conduct began, continued, and was completed in the Southern District of Florida. Thus, venue was proper only in the Southern District of Florida, and we vacate John's conviction for lack of venue.

We reject John's argument that insufficient evidence existed to sustain a conviction under section 1001(a) because her statement to the FBI agent was "literally true." She contends that, when asked if she ever received anything of value from Hammoud "in exchange for" handling the fraudulent banking transactions, she responded "no" because the money was not "in exchange" for her assistance with the banking transactions. This argument is sufficiently

contradicted, however, by John's own written statement in which she admitted that

the money was "for helping [Hammoud] with his account."[3]

VACATED.

---

[3]Because we vacate John's conviction for lack of venue, we need not reach her three remaining arguments: (1) that the district court erred in denying her motion to dismiss the indictment based on lack of venue; (2) that the district court's jury instruction on venue misstated the law; and (3) that the district court erred in denying her motion to suppress.