FILED:   September 13, 2013

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

No. 11-5167
_____

UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

v.

GENARO  FLORES-DURAN,  a/k/a  Genaro  Flores,  a/k/a  Carlos
Perez-Diaz, a/k/a Carlos Perez,

                    Defendant – Appellant.

_____

O R D E R

_____

     The Court amends its opinion filed July 1, 2013, as
follows:

     On the cover sheet, attorney information section – in
the "ARGUED" section, the name "Kristine L. Fritz" is
substituted for the name "Jennifer P. May-Parker." In the "ON
BRIEF" section, the name "Jennifer P. May-Parker" is substituted
for the name "Kristine L. Fritz."

                              For the Court – By Direction

                              /s/ Patricia S. Connor
                                      Clerk

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 11-5167**

─────────────

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

     v.

GENARO FLORES-DURAN, a/k/a Genaro Flores, a/k/a Carlos
Perez-Diaz, a/k/a Carlos Perez,

              Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Eastern
District of North Carolina, at Wilmington.  Louise W. Flanagan,
District Judge.  (7:10-cr-00095-FL-1)

─────────────

Argued:  May 14, 2013                     Decided:  July 1, 2013

─────────────

Before NIEMEYER, MOTZ, and FLOYD, Circuit Judges.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

**ARGUED**:  Geoffrey Wuensch Hosford, HOSFORD & HOSFORD, P.C.,
Wilmington, North Carolina, for Appellant.  Kristine L. Fritz,
OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina,
for Appellee.  **ON BRIEF**:  Thomas G. Walker, United States
Attorney, Jennifer P. May-Parker, Assistant United States
Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North
Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Genaro Flores-Duran and co-defendants Salvador Flores-Duran (Salvador), Jorge Albarran-Rivera (Jorge), and Zacharias Espinoza were charged in a two-count superseding indictment with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count One), and aiding and abetting each other in the possession of firearms in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Two). A jury convicted Flores-Duran of both counts. The district court subsequently sentenced him to 292 months' imprisonment on Count One and sixty months' imprisonment, to run consecutively, on Count Two, for a total of 352 months' imprisonment. Thereafter, Flores-Duran filed a timely notice of appeal in which he raises various arguments as to why we ought to grant him a new trial or, in the alternative, a new sentencing hearing. We have jurisdiction over this appeal pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. Discerning no reversible error, we affirm.

I.

We set forth a brief overview of the facts of this case here. We provide more detailed facts, as relevant to the appellate issues, below.

In 2009, federal and state law enforcement agencies from South Carolina and North Carolina discovered a group of Mexican nationals involved in a drug trafficking conspiracy dealing in large quantities of cocaine in both South Carolina and North Carolina. The multi-year conspiracy lasted until August 11, 2010.

The investigation established that Flores-Duran and his brother, Salvador, were the leaders of the conspiracy. Other participants included, but were not limited to, Jorge, Espinoza, Luis Cesar-Rosas, Esteban Rivera, and Concepcion Villegas-Flores.

On August 11, 2010, Deputy Jonah Jenkins of the Jasper County Sheriff's Department stopped Flores-Duran for following another vehicle too closely, in violation of South Carolina Code Section 56-5-1930(a). Flores-Duran consented to a search of his vehicle. During the search, Jenkins found a white powder, which, after a field test, showed evidence of cocaine. Moreover, Jenkins's K-9 partner alerted on some bags in the trunk of Flores-Duran's car. Thereafter, Jenkins arrested Flores-Duran.

The grand jury returned a superseding indictment against Flores-Duran, Salvador, Jorge, and Espinoza on March 10, 2011, charging them with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count One), and possession of

4

firearms in furtherance of a drug trafficking offense and aiding and abetting, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Two).

At trial, the jury convicted Flores-Duran of both counts. The district court subsequently sentenced him to 292 months' imprisonment on Count One and sixty months' imprisonment, to run consecutively, on Count Two, for a total of 352 months' imprisonment. This appeal followed.

## II.

First, Flores-Duran contends that the district court abused its discretion by failing to dismiss the charges against him on account of the government's violation of the magistrate judge's discovery order. Rule 16(d)(2) of the Federal Rules of Criminal Procedure provides the district court with broad discretion to fashion the appropriate remedy for a party's discovery violation. Yet, its discretion is guided by "a discrete set of traditionally judicial inquiries concerning 'the reasons for the government's delay and whether it acted intentionally or in bad faith; the degree of prejudice, if any, suffered by the defendant; and whether any less severe sanction will remedy the prejudice and the wrongdoing of the government.'" United States v. Gonzales-Flores, 701 F.3d 112, 116 (4th Cir. 2012) (quoting United States v. Hastings, 126 F.3d 310, 317 (4th Cir. 1997)).

Flores-Duran maintains that "[d]uring the week prior to trial, [that was then set for April 2011,] the [g]overnment sent over one thousand pages of additional discovery, the bulk of which was due no later than fourteen days prior to trial." Based on the discovery violation, Flores-Duran moved to dismiss the indictment. He also sought, as alternatives, to exclude certain witnesses or to continue the trial. The district court continued the trial to May 2011.

The government concedes that it failed to provide all of the discovery materials that it was obligated to provide within the time period required by the magistrate judge. According to the government, however, there were several reasons for the failure, including government counsel's misreading of the discovery order; a power outage caused by a large storm at the courthouse in Raleigh, where the government's offices are located; and the government's last minute decision to present certain evidence.

Flores-Duran argues that he was prejudiced by the government's late disclosure in two ways. "First, the [g]overnment's action delayed the trial of his case. There can be no reason for the late release of over one thousand pages of documents other than to ensure a continuance of the trial." But, this suggests bad faith on behalf of the government, and neither we nor the district court have found any. Instead, we,

6

like the district court, find the government's explanation plausible. As explained by the district court:

> Well, I have three defendants, each of whom, through his attorney, indicates that he is not prepared to go forward to trial. And, what's been described, with the overlay of a storm, is somewhat of a perfect storm. The government's decision not to prepare for this trial until the eve of it, based on workload issues and other matters, and that preparation resulted in a determination that a number of other documents needed to be disclosed.
>
> And then there was a storm, and there were issues arising, and the disclosure was suggested as being late in an e-mail to which no defendant responded.
>
> There was some effort on the part of all counsel, it appears, to be ready today, despite the volume of material disclosed last week. And I understand none of you is ready for trial.
>
> Each of you seeks a continuance of between three weeks and a month, and I'm going to allow that, with concern, too, as we have approximately 50 people ready to submit to the jury processes. And the Court will be explaining to them that their services cannot be received today.

Flores-Duran also asserts that he was prejudiced because "the continuance afforded the [g]overnment more time to locate Alan Pickering who identified Genaro Flores-Duran as the man who paid to rent his trailer." We find this argument unpersuasive, and will discuss it in more detail in the next section.

As already stated, we find the reasons given by the government for the delay to be credible. And, we find no bad faith. Flores-Duran would have been greatly prejudiced had the district court not provided some sort of remedy for the government's discovery violation. That said, we are satisfied

7

that the district court's choice of a continuance, as opposed to outright dismissal, cured any prejudice and was not an abuse of discretion.

### III.

Flores-Duran maintains that the district court also abused its discretion in not excluding Pickering's testimony and related documents based on the government's late disclosure that it intended to call him as a witness. "[D]ecisions regarding whether a witness should be allowed to testify are generally reviewed for abuse of discretion." United States v. Fulks, 454 F.3d 410, 421 (4th Cir. 2006).

Pursuant to Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure,

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

The obligation to provide these materials is ongoing:

> A party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court if:

> (1) the evidence or material is subject to discovery or inspection under this rule; and
>
> (2) the other party previously requested, or the court ordered, its production.

Fed. R. Crim. P. 16(c).

When replacement counsel took responsibility for this case in mid-May, approximately two weeks before the case was to go to trial, she requested that law enforcement agents find the landlord of the second trailer in Loris, South Carolina, which Flores-Duran rented and used as a stash house for his drug operation. Authorities recovered firearms, over a kilogram of cocaine, and over one-hundred thousand dollars in United States currency when they raided the trailer. Flores-Duran had earlier used another trailer in Loris as a stash house. Government's counsel informed defense counsel that she had made this request.

On Friday afternoon, May 20, 2011, which was the Friday before trial was to begin, the agents met with the landlord, Alan Pickering. At that meeting, Pickering gave the agents documents related to the rental of the second trailer and made an out-of-court identification of Flores-Duran. The next day, counsel for the government faxed the documents to counsel for Flores-Duran but failed to telephone to ensure receipt. As it turned out, Flores-Duran's counsel did not receive the documents until Monday—what was to be the first day of trial. The district court was troubled by the late disclosure but decided not to exclude the testimony. Instead, it continued the trial

9

for a month. This was proper, and Flores-Duran does not argue otherwise in his brief.

According to Flores-Duran, however, it was the April 2011 continuance that prejudiced him such that the district court should not have allowed Pickering to testify. Flores-Duran avows, "Without that continuance, the [g]overnment would not have had Alan Pickering available as a witness. Genaro Flores-Duran was prejudiced by both the continuance and also by the denial of the motion to exclude Mr. Pickering's documents, photo identification, and his other testimony." We make two observations. First, there is nothing in the record to suggest that the government did anything to delay the trial so that Pickering could be found. In fact, there was no attempt to find Pickering until after the April 2011 continuance had been ordered. And second, just as the continuance allowed the government additional time to locate a witness favorable to its case, Flores-Duran had additional time to locate witnesses that might have been favorable to his case, as well.

For these reasons, we conclude that the district court did not abuse its discretion in its refusal to exclude Pickering's testimony and related documents from Flores-Duran's trial.

IV.

Flores-Duran next challenges the district court's decision to deny his motion to exclude Pickering's out-of-court

10

photographic identification of him.  We review "factual particulars of [the] identification . . . for clear error." United States v. Saunders, 501 F.3d 384, 389 (4th Cir. 2007). And, "[w]e review de novo the court's legal conclusion as to whether the identification violated the Due Process Clause." Id.

The defendant has the burden of establishing that the out-of-court identification was infirm.  Id.  "The consideration of whether the identification testimony is admissible proceeds in two steps."  Id.  First, the defendant must demonstrate the identification process was impermissibly suggestive.  Id.  If he meets this burden, then the court must consider "whether the identification was nevertheless reliable in the context of all of the circumstances."  Id. at 389-90.

"A witness's out-of-court photo identification that is unreliable and therefore inadmissible on due process grounds also renders as inadmissible his subsequent in-court identification."  Id. at 390.  "In this circumstance, as the Supreme Court has said, the witness 'is apt to retain in his memory the image of the photograph rather than the person actually seen, reducing the trustworthiness of subsequent . . . courtroom identification.'"  Id. (quoting Simmons v. United States, 390 U.S. 377, 383-84 (1968)).

According to the testimony at the district court hearing on this matter, Officer William Kitelinger, a corporal with the

11

Myrtle Beach Police Department, met Pickering at Colonial Mall between Myrtle Beach and North Myrtle Beach at approximately 4:00 PM on May 20, 2011. According to his testimony, he

> showed [Pickering] three photographs, asked him if he recognized anybody in any of the photographs. He immediately identified one person in the photograph. I asked him who that person was and he said that was the person that gave him the money for the rent or was present when the trailer was rented. I had him then turn over the picture and write on the back who that person was to him. Then he gave me a photocopy of a receipt for the rent for the trailer. I then collected up those items and left.

Kitelinger asserted that he failed to give the cautionary instruction normally given for a photo lineup because "it wasn't in [his] opinion a photo lineup. The photos given were people that we had already identified, so it wasn't standard." Further, he agreed that, in a standard lineup, there are normally six, not three, photographs shown. In Pickering's testimony at the hearing, he stated that he felt no pressure to choose one of the photographs and did not feel rushed, although Kitelinger seemed as if he was in a hurry.

According to Flores-Duran, "[t]he officer gave Mr. Pickering no guidance when the Myrtle Beach Police Department officers routinely provide cautionary instructions to people viewing photos. The method employed was impermissibly suggestive, and as such, the district court erred in allowing admission of the out-of-court identification." But we agree with the district court: It "had an opportunity to observe both witnesses and hear what [they] each had to say in response to

12

[counsel's] questions. [Although] it certainly seems it was a brief encounter and not a very involved one, [Pickering's] identification of [Flores-Duran] may be allowed into evidence as it was not an unduly suggestive process."

Because the identification was not impermissibly suggestive, there is no reason for us to consider whether it was reliable. Consequently, we find no error in the district court's decision to deny Flores-Duran's motion to exclude Pickering's out-of-court photographic identification of him.

V.

Next, Flores-Duran complains that the district court erred in not granting his motion for judgment of acquittal on the gun charge. Our review of the district court's denial of a motion for judgment of acquittal is de novo. United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1401 (4th Cir. 1993). In making such a review, we must decide "whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir. 1982).

According to Flores-Duran, there is no substantial evidence to support a finding that he possessed a firearm in furtherance of the drug conspiracy charged in Count One of the superseding

13

indictment. But, "[a] defendant may be convicted of a § 924(c) charge on the basis of a coconspirator's use of a gun if the use was in furtherance of the conspiracy and was reasonably foreseeable to the defendant." United States v. Wilson, 135 F.3d 291, 305 (4th Cir. 1998). There are many ways in which a firearm might be used to further or advance drug trafficking:

> For example, a gun could provide a defense against someone trying to steal drugs or drug profits, or it might lessen the chance that a robbery would even be attempted. Additionally, a gun might enable a drug trafficker to ensure that he collects during a drug deal. And a gun could serve as protection in the event that a deal turns sour. Or it might prevent a transaction from turning sour in the first place.

United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002).

There is considerable evidence in the record to support Flores-Duran's §§ 924(c) and 2 conviction. For instance, there were approximately thirteen guns in the first Loris trailer that Flores-Duran rented for selling cocaine. As Esteban Rivera, one of Flores-Duran's co-conspirators, testified at trial, the guns were for him and others "to defend [themselves] from people who may want to come in and rob or if there were any problems between [the customers] or the police." When Rivera and his coconspirators moved into the second Loris trailer that Flores-Duran rented, they took the guns with them. Asked where the guns came from, Rivera stated that Flores-Duran "bought them from this guy that came one time. It was a Mexican guy." He also attested that on a couple of occasions he and Flores-Duran tried out one of the guns.

14

Moreover, Luis Cesar-Rosas testified that on March 24, 2010, when he purchased ten ounces of cocaine from Flores-Duran at the second Loris trailer, "There was a gun on the countertop, it was right where you walk in the door. . . . I recall I did see it on the first time I was there. He had it on his waistline but the other time it was laying on the countertop."

The record is replete with many more examples that we need not enumerate here. Suffice it to say, substantial evidence supports Flores-Duran's § 924(c) and 2 conviction.

VI.

Flores-Duran also argues that the district court erred in denying his motion to suppress evidence obtained during the August 11, 2010, traffic stop in Jasper County, South Carolina. Although he consented to the search of his vehicle, he avers that the traffic stop itself was improper. Ordinarily, on a motion to suppress we review a district court's legal conclusions de novo and its factual findings for clear error. See Ornelas v. United States, 517 U.S. 690, 699 (1996). In doing so, we construe the evidence in the light most favorable to the prevailing party below. United States v. Perkins, 363 F.3d 317, 320 (4th Cir. 2004). But when, as here, the magistrate judge makes a recommendation on how to dispose of the motion and a party fails to timely object, that party waives appellate review of the district court's decision to adopt the

15

recommendation. Wright v. Collins, 766 F.2d 841, 845 (4th Cir. 1985).

A magistrate judge considered Flores-Duran's motion to suppress and issued a memorandum and recommendation to the district court suggesting that it deny the motion. In his recommendation, the magistrate judge noted that the parties would have fourteen days to file any objections and declared that failure to file any objections by a party would bar that party from seeking appellate review. Still, Flores-Duran failed to file any objections to the memorandum and recommendation. Thus, Flores-Duran waived appellate review. The district court subsequently adopted the recommendation and denied Flores-Duran's motion to suppress.

Alternatively, even assuming that Flores-Duran preserved this issue for appeal, we would still hold that the district court did not err in finding that Deputy Jenkins had probable cause to stop Flores-Duran for a violation of South Carolina Code Section 56-5-1930(a). Pursuant to Section 56-5-1930(a), "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." United States v. Sowards, 690 F.3d 583, 588 (4th

16

Cir. 2012) (quoting <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996)) (internal quotation marks omitted).

The evidence the government presented at the hearing on this matter demonstrated the following: In deciding whether a vehicle is following another vehicle too closely, Deputy Jenkins employs a rule of thumb that a safe following distance is approximately one car length for every ten miles per hour that the vehicle is traveling. In this instance, Deputy Jenkins observed Flores-Duran driving seventy miles per hour within just one car length of a tow truck as he approached an active construction site.

Flores-Duran argues that he was stopped for a violation of Deputy Jenkins' rule of thumb and not Section 56-5-1930(a). Thus, according to Flores-Duran, Deputy Jenkins did not have probable cause to stop him. We are unconvinced. Because Deputy Jenkins thought that Flores-Duran was following the tow truck "more closely than [was] reasonable and prudent," S.C. Code Ann. § 56-5-1930(a), he had probable cause to initiate a stop of Flores-Duran's vehicle. Hence, because Jenkins had probable cause to initiate the stop, and Flores-Duran consented to the search of his vehicle, the district court properly denied Flores-Duran's motion to suppress the evidence gathered as a result of the stop.

VII.

17

As to sentencing, Flores-Duran claims that the district court erred in overruling his objection to the four-point enhancement that it ultimately imposed pursuant to U.S.S.G. § 3B1.1(a). When deciding whether the district court properly applied the Sentencing Guidelines, "we review the court's factual findings for clear error and its legal conclusions de novo." United States v. Allen, 446 F.3d 522, 527 (4th Cir. 2006). The district court's decision concerning a role adjustment is a factual determination, reviewable for clear error. United States v. Kellam, 568 F.3d 125, 147-48 (4th Cir. 2009). "A finding of fact is clearly erroneous when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" In re Mosko, 515 F.3d 319, 324 (4th Cir. 2008) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

The district court applied a four-level enhancement for Flores-Duran's leadership role in the drug conspiracy. Flores-Duran argues, however, that the evidence establishes that he engaged in only buyer-seller relationships.

Pursuant to Section 3B1.1(a) of the Sentencing Guidelines, the district court is to impose a four-level enhancement to a defendant's sentence "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." In determining

whether one is a leader or organizer, the district court should consider the following factors:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4.

As detailed in the Addendum to the Presentence Report and relied upon by the district court,

> Flores-Duran engaged in a conspiracy to distribute cocaine from 2004 to August 11, 2010. Specifically, in 2004, [Flores-Duran] relocated from Florida to North Carolina and began selling cocaine with his brother, Salvador Flores-Duran; however, a short time later, the brothers began obtaining cocaine separately but from the same sources, and utilizing several of the same co-conspirators in their drug distribution activities. To further the conspiracy, Genaro Flores-Duran also recruited individuals to pick up and distribute cocaine for him, established stash houses to store and distribute cocaine, and employed an individual to count and package money brought into one of the stash houses. Specifically, Concepcion Villegas[-]Flores was paid a total of $10,000 to travel to Georgia on at least seven occasions to pick up several kilograms of cocaine for Genaro Flores-Duran and Salvador Flores-Duran. Additionally, Luis [Cesar-]Rosas sold over 250 grams of cocaine to a confidential informant for [Flores-Duran]. Lastly, Genaro Flores-Duran employed Esteban Rivera to count and package money brought into his (Genaro Flores-Duran's) stash house located in Loris, South Carolina.

Concerning the district court's imposition of the enhancement, having carefully reviewed the entire record before us, we are not "left with the definite and firm conviction that a mistake has been committed." In re Mosko, 515 F.3d at 324 (quoting U.S. Gypsum Co., 333 U.S. at 395) (internal quotation

19

marks omitted). Hence, we find no clear error in the district court's decision to employ the four-level enhancement to Flores-Duran's sentence.

## VIII.

Finally, Flores-Duran contests the district court's decision denying his motion to dismiss the gun charge for lack of venue. "[W]e review the district court's determination of venue de novo." United States v. Wilson, 262 F.3d 305, 320 (4th Cir. 2001).

Flores-Duran makes no real argument here, except to state that "[he] seeks to preserve this issue on appeal." In fact, at oral argument, his counsel agreed that the government cited the appropriate law on this issue. Thus, we only briefly address this issue here.

"In determining where a crime was committed for purposes of venue, 'a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.'" United States v. Robinson, 275 F.3d 371, 378 (4th Cir. 2001) (quoting United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999)). The underlying offense here is a drug conspiracy. Venue is proper in a § 942(c) prosecution in any district where the underlying offense occurred. Rodriguez-Moreno, 526 U.S. at 281. Several overt acts in furtherance of the conspiracy occurred in

20

the Eastern District of North Carolina, including, but not limited to, selling cocaine, receiving deliveries of cocaine, and recruiting or attempting to recruit other accomplices. Thus, because the underlying offense occurred in the Eastern District of North Carolina, venue was proper in that district. Hence, the district court did not err in denying Flores-Duran's motion to dismiss for lack of venue.

IX.

For the foregoing reasons, we affirm Flores-Duran's conviction and sentence.

AFFIRMED